VALLIANT, J.
This is a suit on a life insurance policy issued by defendant on the life of T. Lisle Standish, deceased, in his lifetime, payable at his death to his administrator. ’ ' /
The petition states that the contract of insurance was entered into November 30, 1892, under the terms of'which plaintiff’s intestate paid defendant $304, and defendant delivered to him the policy on his life for $10,000, payable to his *614 administrator, and specifying on its face that for the consideration paid it was in full force for two years to November 30, 3 894; that Standish died February 14th, 1895, having prior to his death paid two full annual premiums on the policy whereby under the statute law of this State, section 5856, E. S. 1889, the policy was in full force at the time of his death.
The answer admits the issuing of the policy, the consideration for which, it avers, was the agreement contained in the written application therefor and the consideration of $304 paid in advance, “being the premium for two years’ term insurance, being less than the aggregate of two full annual premiums, and said policy was conditioned upon the payment thereafter, to wit, on the thirtieth day of November, 1894, and annually thereafter, of the annual premium of one hundred and ninety-eight dollars.” The answer further avers that the policy was delivered to the insured and the first premium of $304 was paid, but the premium due November 30th, 1894, was not paid then, nor within the days of grace stipulated, nor ever, and thereby the policy lapsed and became of no force.
Defendant also pleads that it is a corporation domiciled in New York, doing the business of insuring lives on the mutual plan only, “administering the assets derived from the premiums of its policy holders solely for the benefit of said policy holders, by and in whose behalf such premiums are paid;” that “among the plans of insurance adopted by defendant insaid mutual business, was that known as thedistributionpolicy plan with twenty year distribution period, whereunder all the policies issued on said plan in any one year to policy holders in the different parts of the world constitute a class, and all profits and surplus derived from premiums on all said policies during said period of twenty years were accumulated until the end of said period, and then distributed for the benefit of such policies as should be in force at the end of such period; and thereby each of the said policy holders of said class acquired a contingent interest, in the event of survivorship of said period in the *615 profits and surplus which might be realized from the premiums on their policies in said class;” that this was the plan of insurance for which plaintiff’s intestate applied, and the plan' on which the policy in suit issued; this plan of insurance included as an essential feature the provisions of the statute law of New York, in reference to the non-forfeiture or extended paid up insurance; that the calculations on which the character of insurance is based are made on the New York statute, and it is a part of the contract of insurance between every policy holder in that class, and the company for all, that the New York statute shall govern and be a part of the contract, and the policy holders in that class are entitled among themselves and as against the company to the shares an'd profits that would accrue by enforcing the provisions of the New York statute; that plaintiff’s intestate expressly agreed in his application that the contract should be governed by the New York statute and having so agreed and on the faith thereof, having been admitted to that class the plaintiff is now estopped to say the contrary; that by the terms of the New York statute premiums for foil three years were required to be paid before the holder of the policy would be entitled to have the reserve or net value applied to extend the insurance, that to hold that the Missouri statute governs the policy in spite of the agreement to the contrary would be to deny the parties the right to make a contract and violate their rights under the Bill of Eights in the Constitution of Missouri and the XIV amendment to the Constitution of the United States.
The reply denied all the allegations in the answer not admitted in the petition.
Upon the trial a jury was waived, and the cause was submitted to the court, upon the pleadings, the policy with conditional receipt thereto attached, the depositions of A. F. Harvey on behalf of plaintiff and C. O. Whitney on behalf of defendant, and the following agreed statement of facts:
*616 “First. Plaintiff is the administrator of T. Lisle Standish the insured named in the policy, duly appointed and qualified as such.
“Second. T. Lisle Standisb, the insured named in tbe policy, died on tbe 14th day of February, 1895, and within ninety days thereafter proofs of bis death in due form were furnished to tbe defendant at its home office in tbe city of New York.
“Third. At tbe date of tbe issuance of this policy tbe only statute of tbe State of New York regulating, or in any manner relating to tbe forfeiture of life insurance policies, is contained in section 88, article II, of chapter 690, of Laws of 1892, of State of New York, and is correctly set out in tbe answer herein.
“Fourth. Said T. Lisle Standisb, tbe insured named in tbe policy, was at tbe time of bis application therefor and continually till bis death a resident of Hume, in Bates county, Missouri, bis application for tbe policy was there made to tbe local agent of tbe defendant, and forwarded by said agent to the home office of tbe defendant in tbe city of New York. Upon tbe issuance of said policy it was forwarded by tbe defendant through its St. Louis office to said local agent at Hume and delivered by him to said Standisb at Hume, tbe first premium having been theretofore paid to the said agent for tbe defendant.
“Fifth. Default was made by said Standisb in payment of tbe premium due on November 30, 1894, due notice of said premium having been given to said Standisb and said premium then defaulted and has not since been paid, ,nor has any subsequent premium been paid upon said policy.
“Sixth. If plaintiff is entitled to recover at all in this action be is entitled to recover tbe amount of tbe face of bis policy, tbe ten thousand dollars ($10,000) less tbe amount of ordinary life premium on said policy unpaid, to wit, one hundred and eighty-eight dollars with interest thereon to April tbe *617 19th, 1895, to wit, five and twenty-nine hundredths dollars, making the total amount deducted of one hundred and ninety-three and twenty-nine hundredths dollars, leaving the value of the claim at $9,806.71, with interest thereon at six per cent from April 19, 1895.”
The policy which was in evidence is thus described by the expert witness: “It-is a policy for the whole life, for ten ' thousand dollars, payable by premiums running during twenty years, of which the first two are made by one reduced payment, issued on the 30th day of November, 1892, in favor of T. Lisle Standish. . . . It is a combination of term insurance and life insurance. -It is not strictly a term policy for two years, because it has a reserve at the end of two years applicable to continuance of the premium payment in part.
“Q. What is the difference between this form of policy ■ and the ordinary twenty year payment policy issued by this company? A. No difference at all in respect to the amount of premiums which are paid during the twenty years. The sum of the premium for the ordinary twenty year policy, and the sum of the premium in' this contract for the same age would be exactly the same. The difference is in the payment of the'fost two years’ premiums by combining them into one payment, the sum paid is three quarters of what would be the amount in two annual premiums.
“Q. Then what is the purpose, if you know, of issuing this form of policy? A. It was to give the policy holder the advantage of the reduction by way of a rebate of commission on the-first payment made by him.”
The policy recites that it is made in consideration of the written application and the agreements therein contained, and of $304 to be paid in advance, being the premium for two years’ term insurance, and of $198, being the life premium to be paid on the 30th November, 1894, and on the 30th November every year thereafter during the continuance of the policy.
*618 In tbe application which, is attached to the policy it is specified that the place of the contract is agreed to be the home office of. the company in New York, and that it shall be construed according to the laws of New York. f
' Attached to the policy was also the following:
NEW YORK MEE INSURANCE COMPANY.
Conditional Receipt.
Eor first two annual premiums for an insurance ' of $10,000 on the life of Mr. T. Lisle Standish.
Received of T. Lisle Standish two hundred and twenty-five dollars ($225), upon condition that should the said application not be accepted by the New York Life Insurance Company, said note shall be returned upon surrender of this receipt; but should the risk be accepted the said insurance shall be in force from this date.
Executed at Hume, Mo., November 12th, 1892.
Jack E. Hagerty, Special Agent.
The testimony of Mr. Llarvey was in the main of expert character, defining the nature of the policy. That of Mr. Whitney, the' secretary of defendant company, was chiefly directed to the character of business of the defendant, and describing the nature of the insurance covered by policies of the-kind in suit; it also related to the action of the company in issuing this policy.
At the close of the evidence the defendant submitted the following declarations of law which the court refused, and defendant excepted:
1. The court declares the law that -upon the pleadings, the evidence and the agreed statement of facts in this case, the plaintiff is not entitled to recover.
2. The court declares the law that it appears from the evidence in this case that the policy in suit became a completed contract, binding upon the parties, upon the acceptance of the *619 ••application, at the home office of the company in the city of New York, and said policy by its terms is made payable at the home office of the company in the city of New York, and the non-forfeiture law of New York was made the applicatory law of the contract by the agreement of the parties. The ■court therefore holds that the statute of Missouri, relied upon by plaintiff, is not applicable to the policy, and the plaintiff is not entitled to recover in this action.
3. The court declares the law that it was competent for the parties to the policy contract sued upon, being citizens of ■different States, to contract in good-faith for the law of either State as the applicatory law of the contract; and that inasmuch as the policy st-ipulafes for the New York non-forfeiture law as part of the contract, such law so stipulated for was binding upon the parties and it being admitted that the policy sued upon was not in force for three full years, as required by the statute as a condition of the nón-forfeiture provision thereof, plaintiff is not entitled to recover in this action.
4. The court declares the law that it appears from the evidence in this case that the policy in suit did not become a completed contract upon the delivery of the policy and the ■payment of the premium in the State of Missouri, but that by the agreement of the parties it had therefore become a completed contract, binding upon the parties upon the acceptance •of the application at the home office of defendant in the city and State of New York; the court therefore holds that the statute of Missouri relied upon by defendant is not applicable to the policy and that the plaintiff .is not entitled to recover in this action.
The finding of the court was for the plaintiff in the sum of $10,483, and judgment accordingly, from which judgment, after due course, the defendant appeals.
All the questions of law involved in this case have been very recently considered by this court in Cravens v. New York Life Insurance Co., 148 Mo. 583, and as we are entirely *620 satisfied that the law was properly declared in that case, we deem it unnecessary to review those questions now. But it is here contended that the facts of this case are essentially different in an important particular affecting the question of the place of the contract, and it therefore becomes necessary for us to consider the case in respect of that point of difference.
If under the facts of this case it be concluded that the contract of insurance was consummated in New York, then it is governed by the statute law of New York and the plaintiff can not recover; but if it was consummated in Missouri it is a Missouri contract, governed by the statute law of this State, and the plaintiff is entitled to recover.
In the Cravens case the application for the policy was made in this State to an agent of defendant resident here, by whom it was forwarded to the home office of the company in New York, and to whom the policy was sent to be delivered to insured, upon payment of- the premium; and accordingly the agent resident here, delivered the policy and received the premiums in this State. The application which was made a part of the contract of insurance, provided that the policy should not go into effect until the payment of the premium to the company or its authorized agent during the life and good health of the insured. It also essayed, as in the case at bar, to make the law of New York the governing law of the contract. In that case this court per Burgess, J., said: “However perfect in form the contract may have been and although all of its other terms and conditions may have been complied with, payment of the. premium during the life and good health of the assured and delivery of the contract to bfm were conditions precedent in order to complete its execution, and as the premiums were paid and the policy delivered to the assured in this State, it must follow that the contract was executed here.” »
In the case at bar also the application provided that any policy which might be issued under it should not be binding *621 until the actual payment of the premium by the assured, and its acceptance by the company or its authorized agent during the life and good health of the assured. Bui it is now contended by defendant that this case differs from the Cravens case in this, that the premium was advanced and accompanied the application, and a receipt given which made the contract binding on the company the instant the application was accepted in New York, and that therefore the acceptance of the application completed the contract without the actual delivery of the policy into the hands of the assured and that acceptance having taken place in New York, the transaction became a New York contract.
Defendant bases its contention for this position chiefly on what is called the conditional receipt copied hereinabove. If the purport of that receipt is as counsel for defendant construe it, the first question raised by it is, did the “special agent” who signed it have authority to make such terms binding on the company ? A principal is bound by the act of his agent acting within the scope of his apparent authority, in transactions with one who is without notice of a limitation on the agency. But in this instance, the application contains this clause: “No agent has power in behalf of the company to make or modify this or any contract of insurance, to extend the time for paying a premium, to waive any forfeiture, or to bind the company by making any promise or making or receiving any representation or information.”
Whether or not a corporation could avail itself of this clause in the contract to repudiate the act of its agent in giving such a receipt if the evidence showed that in point of fact such receipts were furnished the agent by the company to be issued, and he was, either expressly or by the conduct of its business impliedly authorized to issue them, we need not now inquire, because there is no evidence in this case on that piont. In the face of this record if the receipt in question is to be construed as in any sense modifying or changing the contract it was *622 without authority under the clause of the application above quoted, and was therefore not binding on the company. And besides, the evidence on the part of the defendant corporation tends to show that it acted in the matter either in ignorance that such a receipt had been given, or else in repudiation of it. Here is what the secretary of the company said in his deposition: “Q. Was the company’s dealing with -the application in question and executing a policy thereon in accordance with the practice of the company in all cases where all premiums are not paid in advance on making the application ? A. All of the company’s dealing with the application in question and executing a policy thereon was strictly in accord with the uniform practice of the company in all cases where the first premium is not paid in advance when making the application.”
And in another part of his deposition he said:
“Q. What course was taken with regard to it? A. The application was referred to the medical board which advised acceptance of the risk and referred the application to the officers.
“Q. Was said application approved or rejected? A. The application was approved.
“Q. Was a policy issued upon this application, and what was done with it? ■ A. On the 30th of November, 1892, policy 494,089, was issued and transmitted to the manager at St. Louis for delivery on payment of first premium.
“Q. How much was the first premium of the policy, and for how long a time did the payment of such premium continue the policy in force? A. The first premium was $304, and its payment continued the policy until the 30th of November, 1894.”
In the agreed statement of,facts it is stipulated: “Upon the issuance of said policy it was forwarded by the defendant through its St. Louis office to said local agent at Hume, and delivered by him to said Standish at Hume, the first premium *623 having been theretofore paid to the said agent for the defendant.”
Thus by the stipulation it appears that the premium had been paid to the local agent before the policy was delivered, but when that payment was made does not appear, unless 'we are authorized to infer that it was paid when the so-called conditional receipt was given. But we are scarcely justified in so inferring, because the receipt by its face is only for $225, while the first premium demanded by the policy is $304. Besides, the receipt which is not very clear in its terms, gives rather the idea that the $225 there mentioned was a note for that amount, and the condition was that if the application was not accepted the note was to be returned. The annual premium was $198, but the evidence shows that the first two annual premiums were commuted to $304 by paying them in advance, giving the insured the rebate of commissions. If that $304 was paid to the agent on signing the application or before the application was accepted, at the home office in New York, the record does not show it, and the company acted on the application as though the premium had not been paid. When the application was accepted, the company executed a policy to conform to it, but did not mail the policy in New York addressed to the applicant, but transmitted it to the company’s St. Louis office, through which it was transmitted to the local agent at Hume, tó be delivered to the insured on payment of the premium.
The law in regard to the making of contracts by mail is that when a letter containing a proposition is forwarded by mail to be accepted or declined in like manner, if the person to whom it is addressed unconditionally accepts the proposition by letter, and mails it to the person from whom the proposition came, the contract is complete as soon as the letter of acceptance is deposited in the mail. [Parsons on Contracts ('T Ed.), star page 484.] The theory of the law is that the party who makes the proposition by mail and thus invites response by the *624 same medium makes the mail his agent and when his correspondent places the acceptance in the mail it is the same in effect as placing it in the hands of him who invited it by that means. But in such case the letter of acceptance must pass out of the writer’s control, and be addressed to the person who made the proposition, so that he is entitled to receive it from the mail. This does not change the rule of law that an acceptance to be binding must be communicated to the proposer; it only makes the deposit of the letter of acceptance, in the mail, under those circumstances, constructive notice to him who made the proposal that his offer has been accepted. Until there is an actual or constructive notice to the other party of the acceptance it is still in the breast of the acceptor and may be revoked before-it becomes binding. [Bruner v. Wheaton, 46 Mo. 363 ; Lungstrass v. Ins. Co., 48 Mo. 201.]
Actual delivery of the policy was not essential to the consummation of the contract, if the company had chosen to signify to the insured by other means that his application was accepted. But the company did not choose to do so; the first intimation that the insured had that his application was accepted, was the delivery to him of the policy.
When the company resolved to accept the application it kept that resolution within its own breast, and took the precaution to send the policy to its own agent in Missouri to be delivered on condition of payment of the first premium, and withheld from the insured notice of its acceptance. This was simply a resolution within itself, with no outward indication, and within its own power to reconsider and change. It was in the power of the company to recall the policy at any time while it was yet in the hands of its own agents, and if the death of the insured had occurred between the time of mailing the policy in New York and the time of its delivery to him at Hume in this State, the company might have countermanded the order for its delivery and escaped liability, unless there was something else in the case in reference to the agent’s authority *625 to give such receipt, and in reference to the payment of the $304, than appears in this record.
We conclude, therefore, that the contract of insurance was not consummated in New York because it appears from this record that the agent at Hume had no authority to bind the company to a contract of insurance to date from the aeceptance of the application in New York, before the delivery of the policy, and because the evidence does not show that the first premium called for bythe policywas paid in advance when the application was made, and because the evidence shows that the company treated it as a transaction to be consummated upon the delivery of the policy and payment of the premium in Missouri, and because the insured had no notice that his application had been accepted until the policy was delivered to him.
Under these conditions the contract was not complete until the policy was delivered in this State and therefore it is a Missouri contract.
The point is advanced that the $304 being less than the sum of two full annual premiums, the policy is not extended by the terms of our statute, which covers only policies on which two full annual premiums have been paid. But the evidence shows that that was the sum fixed by contract to carry the policy for two years, and was taken as the equivalent for two premiums, the consideration for the commutation being the payment of two instead of one premium in advance.
Under the provisions of our statute, sec. 5856, E. S. 1889, after the payment of two full annual premiums, upon failure to pay the third premium falling due November 30th, 1894, the holder of the policy was entitled to have its net value computed according to the rule in the statute laid down and to. have three-fourths thereof, less indebtedness for the premium due, applied as a single premium for temporary insurance for the full amount of the policy. By the agreed statement on which this cause was submitted that calculation is made and it is there stipulated that if the plaintiff is entitled to recover, *626 the amhiint of his recovery should he $9,806.71, with interest at six per cent per annum from April 19th, 1895, and that was the amount for which the circuit court rendered judgment.
. The rulings of the circuit court were in conformity with the theory that the contract in question was a Missouri contract and governed by the laws of this State, and those rulings were correct.
We find no error in the record, and therefore the judgment of the circuit court is affirmed.
All concur.