## New, Administrator de bonis non, *v.* Germania Fire Insurance Company et al.

[No. 21,348. Filed October 9, 1908.]

1. TRIAL.—*Special Findings.—Insurance Policies.—Execution.*—In an action upon an insurance policy the special findings, to sustain a recovery thereon, must show that the policy was executed. p. 36.

2. INSURANCE.—*Execution of Policy.—Delivery.*—Where the insured took out a fire policy on his house, made payable to the mortgagee, the mortgage requiring insurance and providing that such mortgagee might procure same at the insured's expense, and such policy had expired, the company sending to the insured a renewal thereof together with a bill for the same, which were returned, and the company delivered same to the mortgagee's agents who, on behalf of the mortgagee, agreed to send such bill to the insured and demand payment thereof, and such insured in answer to such agent's letter directed them to pay for same, but before payment was made the house burned, such agent's having made no promise on behalf of the mortgagee to pay for such insurance, the policy is void, there being no delivery. p. 36.

3. SAME.—*Execution of Policy.—Delivery.*—The mere delivery of an insurance policy to a person for the purpose of giving him opportunity of determining whether he wishes to accept same does not conclude a contract therefor, the intention of the parties being the controlling consideration in the execution of a contract. p. 38.

4. PRINCIPAL AND AGENT.—*Agent's Delegation of Authority.—Insurance.*—An agent who has been given a discretionary power to procure insurance for his principal cannot delegate such power to a subagent, though such agent has power to ratify such subagent's acts therein. p. 39.

5. CONTRACTS.—*Insurance.—Mortgages.*—Where a mortgagee fails to pay for, or to agree to pay for, an insurance policy written upon the mortgagor's house, and delivered to such mortgagee, the policy is not executed, although a clause in the mortgage provides for payment by the mortgagee upon presentation of the policy. p. 39.

6. CONTRACTS.—*Consideration.*—*Acts.*—*Promises.*—Where the offerer in a communication asks that the offeree shall do some act, the performance thereof ordinarily constitutes a contract; but where he asks a promise to do something, communication of his acceptance thereof is required, mere mental determination to accept being insufficient. p. 39.

7. SAME.—*Acceptance by Mail.*—An offer made by mail continues until acceptance which must be made within a reasonable time, unless a notice of revocation has been received; and such contract is completed when the offeree mails a letter of acceptance. p. 40.

8. SAME.—*Acceptance.*—*Principal and Agent.*—An offer made to the offeree's agent does not thereby become a contract, even though it be accompanied by a direction to give notice to the offeree. p. 41.

9. SAME.—*Medium of Acceptance.*—The medium of the receipt of acceptance of an offer is ordinarily immaterial, the actual or constructive receipt thereof, before revocation of the offer, concluding the contract. p. 41.

10. EVIDENCE.—*Memorandum of Receipt of Insurance Policy.*—*Principal and Agent.*—A memorandum of the receipt of an insurance policy, made by the clerk of the mortgagee's agents, is not admissible in evidence in an action on such policy, there being no evidence to show that he had any authority in relation thereto. p. 42.

11. APPEAL.—*Right Result.*—Where the right result was reached intermediate errors do not constitute sufficient grounds for a reversal. p. 42.

From Superior Court of Marion County (68,040) ; *Vinson Carter,* Judge.

Action by Burt New, as administrator *de bonis non* of the estate of Henry Geisel, deceased, against the Germania Fire Insurance Company and another. From a judgment for defendants, plaintiff appeals. Transferred from Appellate Court under §1394 Burns 1908, cl. 2, Acts 1901, p. 565, §10. *Affirmed.*

*Austin F. Denny,* for appellant.

*S. N. Chambers, S. O. Pickens, Charles W. Moores, R. F. Davidson* and *Owen Pickens,* for appellee company.

GILLETT, C. J.—Action by appellant on a policy of fire insurance. There were special findings and conclusions of law filed, and the principal question in the case is whether

the policy was accepted. Relative to this question the substance of the facts found may be thus stated: Appellant's decedent, Henry Geisel, held a policy of fire insurance for $1,000, issued to him by appellee company on the buildings on certain Indianapolis real estate belonging to him. This policy expired June 25, 1904. On June 17, 1904, appellee's Indianapolis agents mailed to said Geisel, at Vernon, Indiana, a renewal policy on said property for one year from said date of expiration, together with a bill therefor. The policy was in favor of Geisel, with a mortgage clause attached making the loss payable to Estelle Jennings, mortgagee. Geisel returned said policy and bill, refusing to accept said policy or to pay said bill. At the times aforesaid, and until the conclusion of the trial, said Jennings was the owner of a mortgage on the premises proposed to be insured, and by the terms of the mortgage it was the duty of Geisel to maintain insurance on the buildings in the sum of $1,000 for the benefit of said Jennings, and in the event of a failure so to do she was authorized to take out such insurance, and in such event it was obligatory upon said Geisel to pay to her the amount of the premium with interest. Said mortgagee, at the time aforesaid, was a nonresident of the State, but was represented by Stanton & Stanton, as agents, and they had authority to accept the policy sued on. On June 25, 1904, appellee, by one of its agents, left said policy, with its attached mortgage clause, with a clerk in the office of Stanton & Stanton, whose duty it was to receive and take charge of insurance policies left at the office, and to make proper entries in the books, and he received said policy and placed the same with the mortgage papers of said Jennings, where it subsequently remained. On July 28, 1904, appellee presented its bill for the premium to Stanton & Stanton, and they, as such agents, requested time to communicate with Geisel in order to collect from him, if possible, the amount of said premium, to which the company consented. They thereupon wrote to Geisel, inclosing said bill and requesting

him to pay the same, stating that if he did not do so said Jennings would be compelled to pay the premium and would charge the amount thereof, with interest, to him. No answer to this communication was ever made to Stanton & Stanton, and no promise was expressly made by them to pay the premium, nor was said policy ordered from said company by said Jennings or her said agents. On July 28, 1904, said Geisel received said letter, and he immediately wrote to his rental agents in Indianapolis, inclosing the bill and the letter aforesaid, and directed them to pay the premium at once. Owing to the fact that but one of said Geisel's agents was in the office, they were prevented from paying said premium on the day they received said letter— July 29, 1904—or on July 31, 1904 (the intervening day falling on Sunday), and on August 2, 1904, they tendered payment for said Geisel to said company, which was refused, on the ground that the buildings had burned, the fact being, that they were wholly or partially destroyed by fire on the preceding Sunday, which fact was not known to Geisel or his agents.

It will be observed that there is no finding of the execution of the policy as an ultimate fact. *Smith* v. *James* (1892), 131 Ind. 131; *Indiana Trust Co.* v. *Byram* 1. (1905), 36 Ind. App. 6. Nor can it be said that the finding contains anything more than evidentiary facts upon the subject, some of which tend to show an acceptance, while others militate against that conclusion. The evidence upon the subject, which all comes from appellee's 2. witnesses, is in some respects even weaker. There is no proof that the clerk in the office of Stanton & Stanton had authority to bind the mortgagee. The bill presented to them was made out against Geisel. We do not find that they asked for time to write to him, but rather that they promised so to do. It may, however, be conceded that the granting of time was an implication of the transaction. It is not shown that either member of the firm had

knowledge of the act of the clerk until July 27, 1904, but, if knowledge be assumed, the conversation on that day between them and the representative of the insurance company shows very clearly that their possession of the paper was merely tentative. One of the members of the firm—A. P. Stanton—testified, without dispute, that a representative of the insurance company "came in with the statement that the company had furnished a policy for Henry Geisel, and that the premium had not been paid. * * * I said: 'Well, you speak to my son about it. He will look after it, and will write Mr. Geisel and ask him to send up the amount of the premium.' I think, to the best of my recollection, I said to this gentleman that we were not very much interested in that policy; that is, that we did not feel that policy was absolutely necessary for the protection of our client; that there was a large tract of ground there, and I had gone up there and inspected the premises at the time the loan was made, and the security was ample, even without that insurance; but that we would write to Mr. Geisel, and ask him to send up the amount of the premium in payment of the policy." The substance of the statements made to the insurance company's representative by the other member of the firm is set forth in the following statement made by him as a witness: "I assured him that I would write without delay; that I thought Mr. Geisel must have overlooked the matter, and I would write him and tell him the facts, and ask that he keep his insurance in good standing, and that we were surprised that he had not paid the bill." The letter written to Geisel on that date also shows that it was not the understanding of Stanton & Stanton that there was a concluded engagement, for they therein say: "We hardly think you wish Miss Jennings to provide this insurance, and that there must be some mistake about the matter; but if, as a matter of fact, you have not paid for this insurance, we shall be compelled to protect the interests of the mortgagee by paying it for you. If it was the understand-

ing that Miss Jennings had already taken out insurance, the writer would not have said: "We hardly think you wish Miss Jennings to provide this insurance," or, referring to the possibility of receiving information thereafter that the owner had not paid for it, that "we shall be compelled to protect the interests of the mortgagee by paying it for you." This letter may show an intent to procure insurance, either through the action of the mortgagor or by taking advantage of the covenant in the mortgage, but it clearly shows that the writer did not understand that there was existing insurance.

We take it that appellant cannot successfully contend that there was a concluded engagement for the policy so long as he cannot point to an undertaking, express or implied, on the part of anybody to pay therefor. Responsibility for the risk must find a correlative in someone's liability for the premium, and, so far as any negotiation between the company and Stanton & Stanton is concerned, the whole evidence plainly shows that they had not incurred even a contingent obligation to pay the policy.

The mere receiving of a policy by a person proposed to be insured, for the purpose of determining whether he will accept it, is not sufficient to conclude the contract. *Nutting* v. *Minnesota Fire Ins. Co.* (1897), 98 Wis. 26.

3.

It is said in 16 Am. and Eng. Ency. Law (2d ed.), 855: "Whether an insurance policy has or has not been delivered after its issuance so as to complete the contract and give it binding effect, does not depend upon its manual possession by the assured, but rather upon the intention of the parties as manifested by their acts or agreement. * * * The manual possession of the thing which it is intended to deliver is a matter of little consequence. Such possession may exist without any legal delivery, and it may not exist where a legal delivery has been effected. The controlling question is not who has the actual possession of the policy, but who has the right of possession."

There is no merit in the contention that the clerk had the authority to make the contract, although it was a matter of custom in the office for clerks to receive policies, make entries thereof, and file the policies away. Stanton & Stanton were themselves 'but mere agents, and granting that it was an implication of their employment that they might take insurance policies for the protection of the mortgagees whom they represented, yet, as such an act was one involving judgment or discretion, it cannot be held that they had power to redelegate an authority of that kind. 1 Am. and Eng. Ency. Law (2d ed.), 972 *et seq.* It is true, if the act was within the scope of their original authority, that they might adopt their clerk's act, but, so far as communication with the company was concerned, there was nothing done, after the agents had knowledge that the policy was in their possession, to lead it to suppose that the mortgagee would take the insurance, but, on the other hand, the statements of A. P. Stanton to the representative of the company were strongly calculated to lead to the conclusion that Stanton & Stanton would not, or at least might not, take the policy on Miss Jennings's behalf.

It is suggested that the mortgage clause in the policy provided that the mortgagee should pay the premium on demand if the mortgagor failed to do so, but the difficulty with this argument is that it assumes that the policy was in force.

There remains, so far as the question as to the effect of the evidence is concerned, but one general question, and that is as to the effect of acts done by Stanton & Stanton and Geisel which were not brought to the knowledge of the company prior to the fire. Stanton & Stanton's possession of the policy being explained, we deem it clear that none of the acts amounted to an effective acceptance. In support of the proposition that the policy was accepted, counsel for appellant cite certain cases involving the execution of deeds. We do not regard these

cases as in point. In 9 Cyc., 270, it is said: "There is a radical distinction in regard to communication between offers which ask that the offeree shall do something and offers which ask that the offeree shall promise something. In offers of the former kind communication of the acceptance is ordinarily not required; in offers of the latter kind communication of the acceptance is always essential." In many of the cases first mentioned it may fairly be said that the party making the offer has impliedly made performance a sufficient acceptance, or, in other words, has waived notice of acceptance; but, at least as applied to cases of bare proposals, a reciprocal promise is required, and, therefore, in addition to consent, the party to whom the offer is made must, if he cannot directly communicate his acceptance, use such an agency therefor as amounts to constructive knowledge to the other party. In the case of a mere offer, it is entirely clear that mental determination to accept, or even acts done in pursuance thereof, is not sufficient to bind the party who makes the offer. *Hebb's Case* (1867), L. R. 4 Eq. *9; *White* v. *Corlies* (1871), 46 N. Y. 467; *Beckwith* v. *Cheever* (1850), 21 N. H. 41; *Richardson* v. *School District, etc.* (1866), 38 Vt. 602; 7 Am. and Eng. Ency. Law (2d ed.), 129, and cases cited. It is true that where an offer is made by mail, it is implied, in the absence of notice of revocation reaching the party receiving the offer before its acceptance, that the writer continues willing to contract down to the time that the other party may, with due diligence, accept the proposition, and in such cases the latter may use the same medium to express his assent. In that way the engagement may be concluded before the party making the offer had notice of the acceptance. *Kentucky Mut. Ins. Co.* v. *Jenks* (1854), 5 Ind. 96; *Mactier* v. *Frith* (1830), 6 Wend. *103, 21 Am. Dec. 262; *Burton* v. *United States* (1905), 202 U. S. 344, 26 Sup. Ct. 688, 50 L. Ed. 1057, and note thereto in 6 Am. and Eng. Ann. Cas. 362; 9

Cyc., 293 *et seq.* But this doctrine is not to be so far extended as to make a communication to the offeree's agent a sufficient acceptance, even where it be accompanied by a direction to give notice. *Barr* v. *Insurance Co., etc.* (1878), 61 Ind. 488; *Horton* v. *New York Life Ins. Co.* (1899), 151 Mo. 604, 52 S. W. 356; *Busher* v. *New York Life Ins. Co.* (1904), 72 N. H. 551, 58 Atl. 41.

If the notice of acceptance actually reaches the party making the proposal, the agency through which the fact is communicated may be immaterial (*Perry* v. *Mt. Hope Iron Co.* [1886], 15 R. I. 380, 5 Atl. 632, 2 Am. St. 902); but prior to the receipt of actual or constructive notice there is no contract. The latter proposition was enforced in *Barr* v. *Insurance Co., etc., supra,* wherein this court, referring with apparent approval to certain English cases, said: "In *Hebb's Case* [1867], L. R. 4 Eq. *9, it was held that a proposed contract is not binding on the party who proposes it until its acceptance by the other party has been communicated to him or his agent. It was said in the opinion in the case: 'If A writes to B a letter offering to buy land of B for a certain sum of money, and B accepts the offer, and sends his servant with a letter containing his acceptance, I apprehend that until A receives the letter A may withdraw his offer, and B may stop his servant on the road and alter the terms of his acceptance, or withdraw it altogether; he is not bound by communicating the acceptance to his own agent.' *Dunlop* v. *Higgins* (1848), 1 H. L. Cas. 381, decides that the posting of a letter accepting the offer constitutes a binding contract, but the reason of that is, that the post-office is the common agent of both parties." It is stated in 9 Cyc., 272: "Communication of acceptance to a third person, not the offerer's agent, is of no more effect than noting it in one's memorandum book, which is no more than though it existed solely in one's mind."

In this case it was a known fact that Stanton & Stanton did not retain the policy, as an operative contract, as the

agents of the mortgagee. They were not the agents of the mortgagor, and in retaining possession of the policy and communicating with him, pursuant to an arrangement with the company, it can, at the most, only be said that they became intermediaries through whom he could give notice of his acceptance. He did not have possession of the policy, so that a retention thereof could not, by any possibility, be said to be the doing of an act amounting to an acceptance or of notice thereof. There was presented to him one question, whether he would pay for the insurance; and, having chosen his own agent to give the notice, it was his misfortune that it did not reach the company before the fire occurred.

There was no error in refusing to admit in evidence the card memorandum made by the clerk on receipt of the policy. As we have said, he had no authority to accept the policy as an agreement binding the mortgagee, and the evidence as to what occurred afterwards, as between the representative of the company and Stanton & Stanton, not only fails to show a ratification, but, on the other hand, shows that the latter discouraged the idea of their taking the policy on behalf of their principal, and that they merely promised to write to the mortgagor. See *Heyn* v. *O'Hagen* (1886), 60 Mich. 150, 26 N. W. 861, *Taylor* v. *Agricultural, etc., Assn.* (1880), 68 Ala. 229.

Other questions are presented on the exclusion of evidence, but as it is evident that with the matters excluded in the record the result would still be right, it follows that they are of a non-influential character. As appellant failed on his main case, it must also be held that the error, if any, in striking out certain allegations of one of the paragraphs of the complaint, going to the measure of damages, was neutralized by the failure to make out a case upon the trial for a recovery in any amount. We are bound to disregard errors which were not influential in the attainment of an adverse result.

Judgment affirmed.