**MASSACHUSETTS MUT. LIFE INS. CO. v. NATIONAL BANK OF COMMERCE.**
No. 4248.

Circuit Court of Appeals, Fourth Circuit.
April 5, 1938.

798

Howard R. Klostermeyer and J. M. Woods, both of Charleston, W. Va. (Price, Smith & Spilman, of Charleston, W.Va., on the brief), for appellant.

Sam Silverstein and Lon H. Kelly, both of Charleston, W. Va. (Brown, Jackson & Knight, of Charleston, W. Va., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and H. H. WATKINS, District Judge.

PARKER, Circuit Judge.

This is an appeal from a judgment for the assured on a policy of life insurance in the sum of $25,000 issued by the Massachusetts Mutual Life Insurance Company to the plaintiff, the National Bank of Commerce of Charleston, W. Va., upon the life of its president, Hugh E. Bek. The defense was that the policy was delivered conditionally for the purpose of inspection, that there was never any agreement to accept it and consequently no completion of the contract, that the delivery and payment of premium were conditions precedent to the policy's taking effect, and that these conditions had never been complied with. The assignments of error raise various questions, but in the view which we take of the case we need consider only those relating to the refusal of the trial judge to direct a verdict for the defendant.

On May 14, 1935, the directors of plaintiff bank adopted a resolution that life insurance be taken out for the benefit of the bank on the life of its president, Mr. Bek, in the sum of $50,000. Two soliciting agents of defendant, Hardman and Heiniger, applied for the business, but were told by Mr. Bek that, as the bank had been offered a good account by another insurance company, it would probably place the business with that company. They insisted, nevertheless, that Bek give them an application for $25,000 so that they could obtain a policy for him and submit it for approval; and Bek agreed to do this, signing on May 17, 1935, an application which contained the following stipulation: "I understand and agree: that (1) if there has not been paid the amount of the premium on the insurance herein applied for to the company's agent at the time of making this application, such insurance shall not be in force until the approval of this application by the company at its home office, the payment of the first premium as required by the policy, and the delivery thereof to the owner or its legal representatives during my lifetime; and that thereupon said policy shall be considered as having become effective upon the date stipulated in the policy as the date on which the insurance begins: * * * (5) no agent of the company has any authority to make or modify contracts on behalf of the company, or to alter or waive any of the agreements, conditions, or requirements herein contained."

The policy was not issued on the application until June 17, 1935; and in the meantime Bek had made application to the John Hancock Mutual Life Insurance Company for a policy for the full sum of $50,000 which the directors had authorized, the application for that policy reciting that premium had been paid at the time of the application. On June 19th the policy in suit was received in Charleston, W. Va., by Mr. Pippen, the general agent of defendant in that state and was turned over to Heiniger. Heiniger delivered it to Bek, who stated, according to Heiniger's testimony, that he would take the matter up with his directors. No inspection receipt was taken for the policy, as required by the company's rule when policies are delivered for inspection or on approval, but there was evidence that the rule was not always observed. Bek, did, however, sign an amendment of application directing that the policy be dated June 17th and stating that no premium had been paid in cash or otherwise; and this amendment of application was delivered by Heiniger to Pippen to be held by him until the policy should be delivered and the premium paid and to be then sent to the company.

On June 21st Heiniger, according to his testimony, made inquiry of Bek about the policy and was informed that he had not yet taken the matter up with the directors. On the 25th he showed Bek a telegram from the company to the effect that it was willing to issue an additional $25,000 of insurance on his life. On the morning of the 26th he again made inquiry and was told by Bek that he had two more directors to see and that Heiniger should call back in the afternoon. At the same time he signed an application for an additional $25,000 policy of insurance to be obtained "on approval." Heiniger called at the bank in the afternoon but failed to see Bek who had gone home ill. Bek died later in the afternoon without having paid the premium. Heiniger called at the bank next morning and inquired whether Bek had drawn a check for him and found that he had not done so.

It appears that when the policy in suit was forwarded to Pippen, the general agent, the premium was charged to him; but it also appears that this was in accordance with the custom of the company to charge to the general agent the premiums on all policies sent to him and to allow him credit for the premiums on such as were not delivered. There is no evidence of any custom which permitted the agent to deliver policies without collecting the premiums due or otherwise to waive the conditions contained in the application; but, on the contrary, the evidence is that the agent was required to obtain either cash or notes when making delivery. There is no evidence of any agreement on the part of either Pippen or Heiniger to waive the payment of the premium on the policy in suit or to extend to Bek or to the bank credit for the amount of the premium; but, on the contrary, the evidence is that, while Heiniger was to apply his part of the commissions on the policy on a note of his held by the bank, if the policy should be accepted, a check for the full amount of the premium was to be given to the general agent of the company and Heiniger, after collecting his commissions therefrom, was to make the payment to the bank.

Plaintiff introduced a witness Vaughan, who testified that on the day before Bek's death, Heiniger made the statement that he had sold Bek a policy for $25,000 and that all he, Heiniger, had to do was to go to the bank and get his check for the premium. Plaintiff relied also upon the testimony of S. C. Savage, a director, who signed in behalf of the bank the application for the additional $25,000 policy, to the effect that, when Heiniger was in his office to obtain his signature to the application for additional insurance on June 26th, he had a conversation with Bek over the telephone; that Bek stated in the course of this conversation that he had already given Heiniger $25,000 of the insurance authorized; and that he, Savage, then and there told Heiniger what Bek had said. All except one of the directors testified that they knew of the negotiations with Heiniger and had no objection to the bank's taking the insurance which he was attempting to sell. There was no evidence from anyone, however, that Bek or anyone else in behalf of the bank ever tendered payment of the premium prior to Bek's death or that anything was done from which it could be inferred that a credit for the premium was contemplated.

Under these circumstances we think that verdict should have been directed for defendant. It was an express condition of the application, attached to the policy and made a part thereof by reference, that the insurance should not be in force until "the payment of the first premium as required by the policy"; and this condition was not complied with and we do not think that there is any evidence that it was waived. It is true that a condition of this sort may be waived by the company or by its duly authorized agent, and that ordinarily a delivery of the policy to the assured *with an agreement to give credit for the premium* amounts to such a waiver. See 14 R.C.L. 958. And where there is actual authority on the part of the agent to waive or where authority may reasonably be inferred from the course of dealing between him and the company, waiver will be upheld notwithstanding the apparent limitation upon his authority contained in the policy or in the application. Miller v. Brooklyn Life Ins. Co., 12 Wall. 285, 20 L.Ed. 398; Smith v. Provident Savings Life Assur. Society, 6 Cir., 65 F. 765. And ordinarily the charging of the premium to the agent is sufficient evidence of his authority. Fidelity & Casualty Co. v. Willey, 3 Cir., 80 F. 497. But such waiver cannot be held to arise where the circumstances attending the delivery show that there was no intention

to give credit for the premium; and in such case the condition as to the payment of the premium must be enforced as embodying the agreement of the parties marking the time when the insurance provided for in the policy is to become effective. See MacKelvie v. Mutual Benefit Life Ins. Co., 2 Cir., 287 F. 660; Curtis v. Prudential Ins. Co. of America, 4 Cir., 55 F.2d 97, 99.

In this case not only is there no evidence that a credit for the premium was intended, but the evidence is clearly to the contrary. The evidence of Hardman as well as of Heiniger is that the policy was obtained for delivery on approval, and that the agreement was that, if it should be accepted, the bank would issue its check for the full amount of the premium and Heiniger would deliver to the bank the check which he would obtain from Pippen for his part of the commissions. Nothing in the testimony of either Vaughan or Savage tends in any way to contradict this evidence or to show that any credit for the premium was intended or that the condition requiring payment of the premium was waived. Even if both Heiniger and Bek understood at the time of the conversations to which Savage and Vaughan testified that the bank was to keep the policy, there is nothing to justify the inference that the premium was not to be paid in cash or that such payment was not to be a condition precedent to the insurance becoming effective as provided by the terms of the policy. As was well said by Judge Brewer in Kohen v. Mutual Reserve Fund Life Association, C.C., 28 F. 705, 706: "While it may be conceded that a contract was entered into between these parties, it was a contract to become operative upon the happening of a certain condition; and it is competent, of course, for parties to stipulate as to when their contract shall become operative. Suppose, for instance, that in this application it had been proposed by the applicant that the policy should become in force on the twentieth of November. Such a policy, though issued by the company on the 10th, would not become operative until the time which the parties themselves had named; or if in the application had been a proposition that the policy should become operative 10 days after its receipt at the home office in New York, then, although it were received on the 10th, and accepted on the 10th, the policy would not become operative as a contract of insurance until 10 days thereafter."

The doctrine that, nothing else appearing, delivery of the policy waives a condition requiring prepayment of premium rests upon the presumption that, in such case, a credit for the premium must have been intended by the parties upon the delivery, as it is not reasonable that they would enter into a contract void by its own terms. There is no room for the application of the doctrine, however, where the surrounding circumstances show, as they do here, that no credit was intended. Under such circumstances, the reasonable presumption is that the delivery was for the purpose of inspection and further consideration and that the policy remained subject to the condition expressed in the application, i. e. that before the insurance therein provided should become effective the premium should be paid. It is clear that where delivery is for inspection, it does not waive the condition requiring payment of premium. Hartford Fire Ins. Co. v. Wilson, 187 U.S. 467, 23 S.Ct. 189, 47 L.Ed. 261; Bostick v. New York Life Ins. Co., 5 Cir., 284 F. 256; Coffin v. New York Life Ins. Co., 1 Cir., 127 F. 555; Reliance Life Ins. Co. v. Gulley's Adm'x, 134 Va. 468, 114 S.E. 551; New v. Germania Fire Ins. Co., 171 Ind. 33, 85 N.E. 703, 131 Am.St.Rep. 245; Perry v. Security Life & Annuity Co., 150 N.C. 143, 63 S.E. 679; 1 Couch on Insurance 169-170, 214; Vance on Insurance, p. 179. Plaintiff attaches much importance to the fact that an inspection receipt was not obtained from the insured at the time the policy was delivered; but we do not consider this a matter of importance in view of the understanding that the policy was to be obtained for the approval of the applicant and that it clearly appears that no credit for the premium was intended.

And there is another ground which precludes a finding of the waiver relied on. The delivery was made by Heiniger, a mere soliciting agent, and there is nothing to show authority on his part to make such waiver. Assuming that the charging of the premium to Pippen was sufficient to clothe Pippen with such authority, Pippen did not attempt to exercise it. He was not asked for credit and did not authorize Heiniger to extend credit. True, he turned over the policy to Heiniger to deliver; but Heiniger was authorized to

deliver it as a binding contract only upon obtaining cash or notes for the premium, and Pippen did not know that he had not taken an inspection receipt when making delivery. One who deals with an agent must look to his authority; and one who deals with a mere soliciting agent of an insurance company may not rely upon his authority to waive conditions of a policy, especially where the policy itself gives notice of the limitation of his authority. See Pennsylvania Casualty Co. v. Bacon, 2 Cir., 133 F. 907; Aetna Life Ins. Co. v. Johnson, 8 Cir., 13 F.2d 824; Aetna Life Ins. Co. v. Roewe, 7 Cir., 38 F.2d 393; Inter-Southern Life Ins. Co. v. McElroy, 8 Cir., 38 F.2d 557; Newsom v. New York Life Ins. Co., 6 Cir., 60 F.2d 241.

For the reasons stated, we think that verdict should have been directed for defendant; and the judgment appealed from will accordingly be reversed.

Reversed.