## LATA v. NEW ENGLAND MUT. LIFE INS. CO.

District Court, S. D. New York.

Sept. 23, 1946.

Angelo V. Rubino, of New York City, for plaintiff.

Baldwin, Todd & Lefferts, of New York City, for defendant.

HULBERT, District Judge.

The defendant moved this court, pursuant to Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, for an order dismissing the complaint and granting summary judgment to defendant on its first defense, on the ground that there is no genuine issue as to any material fact, and for such other and further relief as may be proper.

The action is predicated upon a policy of life insurance written by the defendant insuring the brother of the plaintiff beneficiary.

Depositions of the plaintiff and the defendant's agent who solicited the insurance have been submitted in addition to the motion papers, and the following is a fair synopsis of the facts disclosed.

Early in November, 1944, Frank M. Jeckel, a duly licensed soliciting agent associated with C. Preston Dawson of New York City, General Agent of the defendant, mailed several thousand circulars to prospects for life insurance.

Dr. John A. Lata, a dentist, and a World War Veteran with an office at 115 Washington Place, Borough of Manhattan, New York City, responded to one of them.

On Nov. 14, 1944, Mr. Jeckel called on Dr. Lata at his office and, after some discussion, Dr. Lata signed Part 1 of an application for a retirement income policy in the face amount of $10,000, payable in the event of his death to the plaintiff. It is claimed by Jeckel that he suggested to Dr. Lata that he pay the first premium at that time so that the insurance coverage would take effect immediately, but Dr. Lata explained that he had also applied to the Metropolitan Life Insurance Company for a policy of life insurance and would purchase one and reject the other, and that he did not wish to pay any premium until he had had an opportunity to compare the two policies.

On Nov. 21, 1944, Dr. E. A. Burkhart examined Dr. Lata on defendant's behalf and Dr. Lata thereupon signed Part II of said application, which contained the following question and answer: "27. What other negotiations for Life, Disability Insurance, are pending or contemplated? Also application Met. Life. Will take one." On Friday, Dec. 8, 1944, the policy in suit was received from defendant's Home Office in Boston by the General Agent in New York who delivered it to Jeckel, and on the following Monday, Dec. 11, Jeckel again called on Dr. Lata at his office, taking with him the policy in final form, and Jeckel testified that Dr. Lata said he was not ready to accept any policy at that time but would like to look it over and compare it with the Metropolitan policy for which he had applied, and that he would communicate with Jeckel after January 1, 1945. Jeckel thereupon left said policy with Dr. Lata but claims that he did not receive any money, note or check of any kind from him, and that he did not take a receipt for the policy in accordance with the Rule contained in an instruction book issued to Jeckel by the defendant, and which Rule provides, as follows: "Except in cases where the premium has been paid and an additional receipt therefor has been issued, agents must not deliver a policy unless the insured is in good health and pays the premium upon delivery; provided, however, that a policy may be left for examination if an examination receipt on the Company's form be taken. No policy should be delivered, or premium therefor accepted under any other condition."

On Jan. 2d or 3d, 1945, Jeckel made an appointment by telephone with Dr. Lata to call on him on Jan. 8 at 9 a. m.

According to Jeckel, Dr. Lata stated in that telephone conversation that he thought he "had bitten off more than he could swallow", that the annual premium of $583 was more than he could afford, but that he might decide to take a straight life policy in a smaller amount instead of the retirement income policy, and would like to talk the matter over with deponent.

At that time Dr. Lata had an account in the Manufacturers Trust Company, 378 Sixth Avenue, N. Y. N. Y., and the balance to his credit at that time was $3,318.39.

It was testified by the plaintiff that her brother always carried large sums of money on his person and it is her contention that he must have paid this premium in cash, although she admitted that he had never made any statement to her to that effect.

On Jan. 8, 1945, Mr. Jeckel kept the appointment but Dr. Lata was not there and after waiting an hour, Mr. Jeckel left. Later on in the afternoon he telephoned to Dr. Lata's office and was informed that Dr. Lata was dead.

The policy contained the following provisions:

The defendant obligated itself to pay the insured monthly payments of One Hundred Dollars, if the insured was living on the Maturity Date, December 5, 1969; such payments to begin on that date and to continue until one hundred and twenty monthly instalments certain had been paid, and thereafter during the life of the insured, or

"To the Beneficiary, Evangeline Lata, sister of the Insured, if she shall survive the Insured, otherwise to Louis Lata, father of the Insured, if she (sic) shall survive the Insured, the face amount—Ten Thousand—Dollars, or the cash value at date of death of the Insured, whichever is the larger  *  *  *.

"This policy is issued in consideration of the application and of the annual premium of five hundred and eighty three dollars, to be paid in advance as herein specified, and of a like premium to be paid on or before the fifth day of December in each year thereafter until twenty five annual premiums have been paid, or until the prior death of the insured.

"The provisions hereinafter set forth are hereby made a part of this contract."

"The effective date for the calculation of nonforfeiture values and dividends is December 5, 1944 and each policy year shall begin with this date or its anniversary."

### Benefits and General Provisions.

"Premiums are payable at the Home Office, or they may be paid to an agent of the Company only upon delivery of a receipt signed by a Secretary or an Assistant Secretary and countersigned by a General Agent or Manager. Premiums are due annually in advance, but may be paid semi-annually or quarterly at the Company's rates effective at time of issue, or in such other manner as may be agreed upon with the Company. Any amount of premium paid for a period beyond the policy year in which the Insured dies shall be paid in one sum to the person entitled to receive the policy proceeds upon the death of the Insured, or for whose immediate benefit such proceeds are then being applied. In case of failure to pay any premium when due or during the period of grace, this Policy shall cease to be in force except for such values, if any, as are provided by the Non-forfeiture and Loan Provisions."

■ The moving papers establish to my satisfaction that the premium was never received by the defendant and that no commission was paid to or claimed by either Jeckel or the New York Agency by whom he was employed.

It is not asserted by the plaintiff that any authorization to Jeckel to receive the premium, or any receipt therefor was delivered by him to Dr. Lata.

In fairness to the plaintiff, it should be stated, that she does not claim any knowledge, personal or otherwise, on the subject, but no such receipt has been produced. Therefore, the conclusion must be drawn that, if Dr. Lata did pay the premium to Mr. Jeckel, it was never paid over by him to the defendant or its New York Agency, and it must necessarily be inferred that Jeckel has retained this money.

It is contended by counsel for the plaintiff, that this constitutes a triable issue of facts for a jury. With this contention the court cannot agree.

■ If Dr. Lata paid the money to Jeckel without taking a receipt therefor, he constituted Jeckel his agent for the purpose of transmitting the money to the Company, or its representative authorized to receive payment of the same. Perry v. New York Life Ins. Co., Sup., 1940, 22 N.Y.S.2d 696; Berryhill v. Ellett, 10 Cir., 1935, 64 F.2d 253; Gibson v. New York Life Ins. Co., 102 Wash. 180, 172 P. 920; Rothenberg v. Equitable Life Assur. Soc., 65 N.Y.S.2d 344.

Plaintiff attaches much importance to the fact that an inspection receipt was not obtained from the insured at the time the policy was delivered in accordance with the defendant's rule, with which Jeckel, who had been for 15 years in the employ of the defendant, was presumptively familiar.

Supporting Jeckel's explanation is an affidavit made by George Mannello, Assistant Manager of the Greenwich district office of the Metropolitan Life Insurance Company, who deposes:

That on or about Nov. 20, 1944, in response to a request for information made to his Company by Dr. Lata, he visited the latter and quoted to him the premium rates on a $10,000 retirement income at age 60 life insurance policy, and Dr. Lata stated to him that he had also inquired of another insurance company regarding the premium charged by it for a similar policy, but that he did not intend to purchase any policy until after January 1, 1945, at which time he said he would "get in touch" with Mannello, who, on Nov. 24, 1944, prepared and submitted to the Home Office of the Metropolitan Life Insurance Company a "Request for Sales Service" on Dr. Lata, and that on or about Jan. 10, 1945, not having heard from Dr. Lata, he telephoned Dr.

Lata's office to arrange for another appointment but was informed that Dr. Lata had died.

█ It seems reasonably certain from the record before me that notwithstanding the rule of the Company, the policy was delivered for inspection. In Massachusetts Mutual Life Ins. Co. v. National Bank, 4 Cir., 1938, 95 F.2d 797, 118 A.L.R. 1065, as in the present case, the policy was delivered for the inspection and approval of the applicant and no inspection receipt was taken, although required by the Company's rules, and the court held that the policy never took effect.

█ Finally, it was testified by Jeckel, that when he delivered the policy to Dr. Lata, there was an unidentified woman in the office. Within the intervening period, neither the plaintiff nor her attorney has been able to ascertain who this woman was, and it is, of course, problematical even if she can be located, whether her testimony can throw any light upon the subject matter of this litigation. Plaintiff urges however, that the motion should be denied in order to afford her the opportunity to discover the whereabouts of this unidentified witness before the case should be reached for trial, but no presentation has been made of any efforts to locate this expectant witness. The motion must be granted. Settle order on notice.