DIXIE LIFE & ACCIDENT INS. CO. *v.* HAMM.

5-2323                                                    344 S. W. 2d 601

Opinion delivered March 27, 1961.

*Yingling, Henry & Boyett; Moses, McClellan, Arnold, Owen & McDermott; James R. Howard* and *E. M. Arnold,* for appellant.

*Lightle & Tedder,* for appellee.

CARLETON HARRIS, Chief Justice. This is an appeal from a judgment entered in favor of Bobby L. Hamm against the Dixie Life and Accident Insurance Company. The judgment was for $2,997, together with statutory penalty and an attorney's fee of $400. The company issued to appellee the following policies: on January 28, 1957, Policy No. D-02236, providing a daily room benefit of $10.00, together with certain other specified hospital expense benefits, and hereinafter referred to as the "D" policy; on February 15, 1957, Policy No. R-01677, providing a daily hospital room benefit in the amount of $10.00, and on February 26, 1958, policy No. R-02601, providing a daily room benefit of $5.00.[1] The initial premium on these policies, and subsequent premiums up until December, 1958, were paid to the company by the parents of appellee.

On March 21, 1959, appellee was seriously injured in an automobile accident, and was confined to the Davis Hospital in Pine Bluff for 52 days. Subsequent hospitalization was required at the Davis Hospital, Arkansas Baptist Hospital in Little Rock, and Porter Rodgers Hospital in Searcy.[2] When payment under the policies

---

[1] The "D" policy room benefit is without limitation as to the number of days. The "R" policies provide reimbursement for room expense for a period not to exceed 100 days.

[2] Appellant company does not question the amount of the hospital bills; it simply denies liability in any respect.

was demanded, the company denied liability on the ground that premiums due in December, 1958, had not been paid, and the policies had accordingly lapsed. Suit was instituted by Hamm, and the cause was tried on July 18, 1960. Appellee and his mother were the only witnesses. Hamm first testified about the accident, and his stay in the hospital. Relative to the policies, he testified that he was a student in college at the time they were taken out, but was subsequently employed as a teacher at Arkansas A & M College in Monticello; that his parents had paid the initial premium on the policies, and that he left it to them to pay subsequent premiums: that he came home one weekend, early in January, and paid his mother something over $20 for the premium due in December, 1958. (All of the policies allowed a 31 day grace period for payment of premiums, which had the effect of prolonging the time until the latter part of January, 1959.) Mr. Hamm testified that he did not know how the policy premiums had been paid prior to that time, nor did he, of his own knowledge, know whether the policies were in force at that time. The witness testified that the money was given to his mother in cash, but he did not recall the day of the week, day of the month, or denomination of the currency; nor did his mother give him a receipt.

Mrs. Elizabeth Branscum, mother of appellee, was employed as an insurance salesman by the defendant company. Her contract with the company simply provides that she is appointed "to sell Hospitalization: forms D and R." The applications, according to her testimony, were written by her or her husband, signed by Mrs. Branscum for her son, and all premiums were paid by one of the parents. According to her evidence, her son paid her $24 in cash at her home, in January, 1959, the proper amount due for the quarterly premium on the policies, and which would have extended the coverage until the last of March, 1960. Admittedly, Mrs. Branscum never did send this money to the company. At the conclusion of appellee's proof, appellant moved for an instructed verdict on all the policies. This motion

was denied. Appellant then moved for an instructed verdict insofar as the "D" policy was concerned. This motion was likewise denied. The company declined to offer testimony, and appellee moved for an instructed verdict. Both sides then joined in asking that the case be withdrawn from the jury and tried by the court. The jury was dismissed, and the court entered judgment as set out in paragraph one. For reversal, appellant urges first, that the trial court should have directed a verdict for it, and secondly, the court erred in allowing penalty and attorneys' fees to appellee inasmuch as appellee did not recover the amount demanded in his Complaint or Amended Complaint. Under the view we take, the second point becomes moot.

Unquestionably, the policies had lapsed unless the payment of currency by the son to his mother prevented such lapse. Appellant contends that Mrs. Branscum was only a soliciting agent, and was without authority to accept the premium payment in January. 44 C. J. S., § 152, p. 824, states that:

"A soliciting agent is merely a special agent, and as a general rule, he has authority only to solicit insurance, submit applications therefor to the company, and perform such acts as are incident to that power."

This last apparently refers to collecting the initial premium, and delivering the policy. Appellee argues there is no evidence in the record limiting Mrs. Branscum's authority to that of a soliciting agent. We do not agree. Certainly she was not a general agent. 29 American Jurisprudence, § 151, p. 550, defines general agents as follows:

"A general agent is taken to be one who has authority to transact all the business of the company of a particular kind, or in a particular place, and whose powers are prima facie coextensive with the business entrusted to his care. Stated differently, a person who has charge of the company's business in a state and who acts under general instructions, without special limitations upon his authority, is a general agent. Indeed, the view

has been taken that whatever an insurance company may do can be done by its general agents. Broadly speaking, one must be regarded as the general agent of an insurance company if he is authorized to accept risks, to agree upon and settle the terms of insurance, and to carry them into effect by issuing and renewing policies. Accordingly, agents have been regarded as general agent of an insurance company if he is authorized to accept risks, to agree upon and settle the terms of insurance, and to carry them into effect by issuing and renewing policies. Accordingly, agents have been regarded as general agents where they fully represent the insurance company in a particular district and are authorized to solicit insurance, receive money and premiums, issue and renew policies, appoint subagents, and adjust losses.''

Section 152 defines special agents:

''A special agent is one who is authorized to do one or more specific acts in pursuance of particular instructions, to act in a particular transaction, or in a particular way. The customary function of special agents is to induce third parties to make application for insurance, to forward such applications to the insurance company and to deliver the policy issued upon the receipt of the first premium in cash.''

We think it clear that under her contract with the company, Mrs. Branscum was no more than a soliciting agent, and as such, acted as a special agent with limited authority.

Appellee asserts that in the absence of notice to the contrary, one dealing with an admitted agent has the right to presume that he is a general agent, and acting within the scope of his authority. This assertion is erroneous. In *National Life & Accident Insurance Co.* v. *Broyles*, 197 Ark. 113, 122 S. W. 2d 603, this Court, in quoting from an earlier case, said:

''A principal is not bound by the acts and declarations of an agent beyond the scope of his authority. A person

dealing with an agent is bound to ascertain the nature and extent of his authority. No one has the right to trust to the mere presumption of authority, nor to the mere assumption of authority by the agent.''

This holding has been reiterated several times. *Couch on Insurance*, 2d Edition, Vol. 3, § 26:70, p. 547, states:

''One who deals with soliciting and collecting agents of a life insurer must determine at his risk the extent of the agent's authority, as for example, whether the soliciting agent has authority to receive premiums other than the first, especially where the policy itself gives notice of the limitations of his authority.''

The ''D'' policy, paragraph 5, provides:

''All premiums hereunder, except the initial premium herefor, shall be due and payable at the Home Office of the Company, but may be paid to any agent, cashier or collector duly authorized by the Company to accept premiums; provided, however, that if premiums be paid other than at the Home Office of the Company, they shall be paid only in exchange for the Company's Official Receipt signed by the President, Vice President or Secretary of the Company and countersigned by the Company's duly authorized agent, cashier or collector.''

The ''R'' policies provide, in part 6, section 3:

''This policy is issued in consideration of the application herefor, a copy of which is attached hereto and is hereby made a part hereof, and of the payment in advance of the premium for the initial term hereof. This policy shall take effect at 12 o'clock noon, Standard Time of the place where the Insured resides, and shall end at the same hour on the last day of grace following the last day of the initial term. The effective date of this policy, the initial premium herefor, and the initial term hereof, are shown on Page One hereof. This policy is renewable at the option of the Company only by the payment in advance or within the grace period provided herein, of the appropriate premium according to

the Company's premium rates in effect at the time of such renewal. * * *"

Accordingly, in the "D" policy, the insured had notice in the contract itself that the premiums were payable at the home office of the company, and he is precluded from recovery under our holding in *Gordon* v. *New York Life Insurance Co.*, 187 Ark. 515, 60 S. W. 2d 907. In that case, Gordon purchased a policy from one Fiser, the local resident agent of the New York Life Insurance Company. Fiser solicited the application, obtained the policy, delivered same to Gordon, and collected the first premium. Within the 30 day period of grace, Gordon paid Fiser the next premium due, and received Fiser's personal receipt for same. The policy contained a provision similar to that of the "D" policy here under discussion. The Opinion recites some of Fiser's activities as an agent of the New York Life Insurance Company, and there was testimony that Fiser had been collecting premiums for the company. The money was not sent in to the company office. This Court sustained the action of the trial court in directing a verdict for the insurance company, stating:

"If it had been shown that the money was paid in fact to the insurance company, a different question would be presented; but there is no such question in this case of ratification, or estoppel of the company to deny the payment."

The principles of law cited in the *Broyles* case, and from *Couch*, equally apply to the "R" policies, though we thoroughly agree with the general comment in A. L. R., Vol. 85, p. 749, under the heading, "Person to Whom Payment of Insurance Premium May be Made So As To Charge Insurer." Therein, it is stated:

"Any general rule covering the cases herein considered is difficult of statement, and almost useless, since each case is governed by its individual circumstances, but it may be said generally, that, where the insurer actually receives the amount of the premium and retains it as

such, the payment is valid although the person collecting it was not authorized to do so; and that the insurer may estop itself by its actions to deny that payment has been made to the proper person, or it may waive contract provisions regarding the person to whom payment may be made.''

Likewise, in 14 *Appleman Ins. L. & P.*, § 7984, p. 229:

''An agency to deliver policies does not necessarily imply power to collect premiums, and the extent of agency in that respect must be determined by the particular circumstances and relations between the parties. To establish that an agent outside the home office of an insurance company had authority to accept renewal premiums on behalf of the company, it has been stated that it must be proved either that such agent had actual authority or apparent authority by the company representing and holding out such agent as having such authority, and that the insured knew of and relied on the representations. The fact that the insured had been in the habit of making payment to another who turned them over to the proper person does not establish such authority in the first recipient. * * *''

Let us proceed to apply these principles of law to the facts in the instant litigation. In the first place, it is at once obvious that appellee did not rely upon any apparent authority of his mother to collect premiums, since he had never paid a premium prior to January, did not know how the policy premiums had been paid, and did not even know whether the policies were in effect at that time. It is equally evident that no attempt was made to ascertain the authority of his mother to accept premiums. As stated, the record shows that Mrs. Branscum had never before collected any premiums from her son, and there is nothing in the transcript to indicate that she ever collected premiums from anyone in behalf of the company. There is no evidence that the company had represented, or held out, to appellee, or anyone else, that she did have such authority. As indicated in the citations herein, an entirely different question would be presented had Mrs. Branscum sent the premium to the company.

Summarizing, we conclude that there was no substantial evidence that Mrs. Branscum had authority to collect premiums, and no substantial evidence of acts committee by appellant, upon which appellee could, or did, rely, that would justify a finding that the company was estopped to deny that payment had been made to the proper person.

Reversed and dismissed.