DAVID D. PANICK, EX'R v. DR. MAC McLENDON

5-4030                                    409 S. W. 2d 497

Opinion delivered December 12, 1966
[Rehearing denied January 16, 1967.]

*Catlett & Henderson,* for appellant.

*Daggett & Daggett,* for appellee.

CARLETON HARRIS, Chief Justice. Sarah Panich, a resident of Marianna, Arkansas, died testate on March 8, 1965. Under the provisions of her will, all of her property was devised and bequeathed to Ike Panich and David D. Panich, who were named co-executors. The will was admitted to probate on March 17, 1965, the nominated co-executors being appointed co-executors of the estate. On September 7, 1965, Dr. Mac McLendon of Marianna, appellee herein, filed a claim against the estate in the amount of $1,350.00, the claim being set out in a statement entitled, "To Balance Account Rendered." Charges were shown in the amount of $150.00 per month from March, 1963, to December, 1963, both inclusive, and a like sum per month for December 1964, to February, 1965, both inclusive. The entire amount of the claim totaled $2,850.00, but credits were reflected

in the amount of $1,500.00, leaving a balance of $1,350.00. A motion was filed by the executor, David D. Panich, appellant herein,[1] to make the claim more definite and certain, and McLendon responded, setting out the basis for the amount sought, the answer reflecting the claim related to professional services rendered to Miss Panich. On hearing, the court allowed the claim, and from the judgment so entered, appellant brings this appeal. For reversal, it is first asserted that the trial court erroneously permitted appellee to change his cause of action, and it is then contended that the evidence was insufficient to establish the amount of the claim. We proceed to a discussion of these points in the order listed.

The first contention is based upon the fact that Dr. McLendon's claim was a statement of account setting forth only charges and credits, without giving the reason for the alleged indebtedness. Before the hearing commenced, counsel for the appellant stated to the court that appellant objected to the claim and any testimony that might be taken in support of it, because it did not comply with Ark. Stat. Ann. § 62-2603 (Supp. 1965), in that it did not describe the nature of the claim. Counsel asserted that "it might be for professional services rendered; it might be for medicines furnished or prescribed; it might be for a personal debt, or it might be for anything." He objected to hearing proof, stating, "So, if Your Honor please, the nature of the debt has not been stated." Appellant complains that the court permitted Dr. McLendon to establish the amount of his claim on a *quantum meruit* basis, and that he was not prepared to defend against this pleading, his understanding being that the claim was predicated upon an oral contract between appellee and Miss Panich as to the amount of the doctor's charges for services rendered.

We do not agree with appellant that error was com-

---

[1] The record does not reflect whether David D. Panich, subsequent to the issuance of letters testamentary, became sole executor of the estate, but he is the sole appellant.

mitted. This particular attack appears to be presented for the first time in this court, and there appears no objection during the trial in line with the present argument. Appellant's objection went only to the sufficiency of the claim itself (because the nature of the indebtedness was not stated in the original claim filed); however, the answer filed in response to appellant's motion to make more definite and certain, gave the information that the claim was for professional services, and the court exercised its discretion in permitting the amendment. This was done at the very outset of the trial, and before the introduction of any proof. Appellant did not seek a continuance, and permitted all six witnesses who testified for appellee to offer their evidence without objection. The evidence of the several doctors who testified related to the reasonableness of Dr. McLendon's charges on a *quantum meruit* basis. The court was entirely within its rights in permitting the amendment, and did not abuse its discretion. See, among many cases, *Missouri Pacific Transportation Company* v. *Brown* 193 Ark. 304, 99 S. W. 2d 245; *Missouri Pacific Transportation Company* v. *Williams,* 194 Ark. 852, 109 S. W. 2d 924; *Nance* v. *Eiland,* 213 Ark. 1019, 214 S. W. 2d 217. Also, the particular argument here offered, as previously stated, was not presented to the Probate Judge, and we have repeatedly held that a litigant cannot, on appeal, raise an issue for the first time in this court. *Angelletti* v. *Angelletti,* 209 Ark. 991, 193 S. W. 2d 330.

Nor do we agree that the evidence was insufficient to establish the claim. Dr. McLendon testified that his charges for house calls are $5.00 each, and that he was due, at the time of the trial, a balance of $1,350.00. He, of course, could not testify as to any contract with the deceased because of the provisions of schedule § 2 Arkansas Constitution of 1874. Mrs. McLendon, who at times works with her husband in his office, testified that Miss Panich called the doctor numerous times between March, 1963, and February, 1965. The witness said that Miss Panich required Dr. McLendon's services three or four times a day during the period of time mentioned, and that some of the visits made were at night.

Virginia Parnell, a practical nurse, employed by appellee during the period in question stated that she saw Sarah Panich every day, sometimes as much as three or four times per day; that she would take Miss Panich medicine; that on numerous occasions, ''she let me give her shots.''[2] Mrs. Parnell testified that Dr. McLendon would go to the home of this patient, upon request, five or six times a day.

Dr. Dwight W. Gray, of Marianna, testified that Miss Panich was his patient for three months during 1962, and he administered demerol to her for pain. The doctor said that he or his office nurse would visit her two or three times on some days. It was the opinion of the witness that a charge of $150.00 per month was a reasonable charge by a doctor who was called upon to render service to his patient three, four or five times per day. Dr. William C. Hayes testified that Miss Panich was a patient of his from 1946 until about 1960, and that when he last treated her, she required daily medication. He agreed with Dr. Gray that a charge of $150.00 per month would be a fair amount for the services that Dr. McLendon testified he rendered.

Appellant complains that there is no proof that there was an express or implied agreement that Miss Panich would pay for the services heretofore mentioned, but we think the proof warrants an inference that this was true. Certainly, there is no indication that Dr. McLendon was making these visits with no expectation of receiving remuneration. Let it be remembered that absolutely *no evidence* was offered to contradict the testimony heretofore referred to, so that the entire testimony, including Dr. McLendon's testimony, that he was due a balance of $1,350.00 is completely undisputed.

It is established that Miss Panich was in need of medical services several times per day, and this fact was

---

[2]Miss Panich was suffering from cancer of the lung, and also an arterial disease, which had affected her lower limbs, and prevented her from moving about, except on crutches.

testified to by Doctors Gray and Hayes, who treated this patient for some time before Dr. McLendon became the physician for Miss Panich. Dr. Hayes testified that, even in 1959 or 1960, when he last treated her, her condition required daily medication, and this, of course, was some period of time before Dr. McLendon entered the case. It would appear, under the evidence, that as her condition worsened, more medication, and more visits were required.

Appellant complains that the charges were made on a monthly basis, and insists that allowance of same is improper, because the exact number of visits, together with the charge for same, is not shown. The simple answer to this is that, under the evidence, appellant is in no position to complain, for the charges, based on specific visits to the home would have been far greater than the amount of the claim filed. The testimony reflected that the ordinary charge for a home visit by doctors in Marianna was $5.00 per visit, and simple mathematics establishes that, during this two-year period of time, if Dr. McLendon only made *one visit per day* the charges would amount to something over $150.00 per month. One call per day is an inappreciable number, as it relates to the overall number of visits testified about during the trial.

The court found that the claim fairly and justly represented the value of the services rendered, and we are unable to say that this finding was against the preponderance of the evidence.

Affirmed.

AMSLER, J., not participating.