LEONARD RAY INGLE v.
MARKED TREE EQUIPMENT CO.

5-4290                                                428 S. W. 2d 286

Opinion delivered June 3, 1968

*Giles Dearing,* for appellant.

*Henry S. Wilson*, for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Ingle asserts that the trial judge erred in directing a verdict in favor of appellee for a deficiency judgment on a purchase money note given for a John Deere combine.

Marked Tree Equipment Company, the appellee, filed its complaint alleging the sale of a John Deere 95-B combine to appellant for $11,068.00 on October 1, 1964, and asserting that it had repossessed the implement on May 5, 1966, because of default of appellant in making payment. It was alleged that appellee made a down payment of $2,280.00 and that the time payment balance of $11,749.62 was to be made in four equal annual payments of $2,937.40, one becoming due on the first day of each succeeding December. Appellee also alleged that notice was given to appellant that the combine would be sold for $6,000.00 unless the balance of $8,812.22 was paid by May 23, 1966. It stated that it "bought" the combine for $6,000.00 on July 15, 1966, the same date it was required to repurchase appellant's time payment note from a bank to which it had been assigned. It sought judgment for $2,812.22 and interest.

Ingle answered, alleging that he purchased this combine upon the representation by the implement company that it would fix up the 95-B combine so that it would perform exactly like the R combine he actually wanted to purchase. He denied that he was obligated to pay any insurance premiums. He further alleged:

When the combine was delivered it had larger wheels on it than usual on that type of combine and that appellant guaranteed that this combine would give him perfect satisfaction and that if he found, upon trial, that it did not perform to his satisfaction, it would not cost him anything; the failure of the combine to perform properly was reported to the implement company and that they tried to make

it work but failed to do so; he then advised appellant to come and get the implement as he could not use it and did not intend to pay for it; appellant took possession of the combine under an agreement that he would not be required to pay for it.

The defense of usury was also pleaded and recovery of a down payment of $2,280.00 was sought. By amendment, appellant sought to recover a payment of $2,937.40 and another of $936.08.

The implement company denied appellant's allegations generally and pleaded a contractual limitation of warranties in the time sale agreement.

The verdict was directed upon conclusion of the evidence on behalf of appellee.

Appellant asserts nine points for reversal, all of which relate to matters which he contends raised factual issues for the jury. Among the points upon which appellant relies are his contentions that there were questions of fact as to material changes in his contract after he had signed it, by alteration of the stated price of the combine and by charging premiums for unauthorized insurance; as to the usurious nature of the transaction; and as to the existence of a new and substituted parol contract at the time of the first payment in which appellee made a new guarantee.

Appellee contends that actions of appellant, with full knowledge of all facts, constituted a waiver of any alleged defenses and a ratification of the contract as a matter of law.

In considering the propriety of the court's action we will view the evidence in the light most favorable to appellant. Even when we do so, we find that many of the allegations of his pleadings are not sustained and that the court's action was not erroneous.

Ingle was a farmer who needed a combine for use in the harvest of 1964. Sometime prior to the harvest he met one Edwin Redd, a salesman for Marked Tree Equipment Company, on the road to Bay Village. They had a discussion in which Ingle advised Redd that he had been looking at a Case combine. Redd's company was a John Deere dealer. They discussed prices and equipment. Ingle testified that Redd said the cost of the combine would be $9,600.00 and that it had 18-inch tires. Ingle expressed his preference for Case equipment because he had "soft ground" and doubted that the tires on the John Deere equipment were wide enough to support it on his land. A few nights later, Redd came to Ingle's house about the matter and after a week or so in negotiations, Ingle signed a contract to purchase the Deere combine. Thereafter, when he went with Redd to see it, he told the manager of appellee, the shop foreman, and Redd that he could not use it because the tires were not large enough. They suggested the use of dual wheels, but Ingle was unfamiliar with them. Redd stated that they said they would guarantee this combine to go anywhere with an extra set of wheels. The shop foreman asked Ingle to bring them a set of rims, but Ingle suggested that they use a set he saw in the shop and now claims that they did so. They did not say anything about charging him for the wheels but went ahead and welded them. When the combine was delivered sometime before October 1, 1964, the wheels and rims were brought with it, but were not attached because of highway width requirements. Ingle was shown the place for bolting them on by the employee who delivered the equipment.

Sometime after the original contract was signed, Redd came out to Ingle's house and brought a new contract, claiming that a mistake had been made on the first one signed. Ingle signed the new document and tore up his copy of the first one as requested by Redd. Some of the writing on the new contract was done at the Ingle house where Ingle signed it. Appellant identified his signature on the contract introduced by appellee. The de-

scription of the equipment was written on the contract the way Ingle wanted it at the time he signed, but there were not any figures as to the money terms. No mention was made of any insurance. Ingle's copy of this contract was received by him by mail some two or three weeks later. Ingle's wife read the contract and showed it to him, after which he called appellee's place of business and told a secretary that he was overcharged. Redd later came out, that evening, and angry words were exchanged. Ingle protests that the contract called for him to pay $12,000.00 although the equipment had been priced to him at $9,600.00. Redd agreed to take the contract back to the manager of the company and promised that if there were mistakes, they would be corrected. The combine was delivered subsequently.

Ingle started using the combine for harvesting soy beans, commencing about October 1st. It worked satisfactorily during dry weather for about three days. Thereafter, there were rains and the combine would bog down so that Ingle was unable to use it for any full day thereafter. His Case equipment operated satisfactorily. After ten or twelve days and two or three rain showers, Ingle abandoned efforts to use the Deer combine and parked it on the hill near his house. However, he attempted to use it later, sometime in November, probably 15 times. He obtained other Case equipment and help in harvesting his crop.

Thereafter, he got notice of his December 1st payment by letter dated November 25, 1964. Still later, Redd came out. Ingle told him then that the combine would not work and that he would not pay $12,000.00 for it "until it cut beans." Ingle expressed the desire that appellee take the machine. The following conversation ensued:

Redd: "We will have to make it work. We will have to find out what it takes to make it work or give you your money back."

Ingle: "If you make it work, I will pay the down payment if you promise me the combine will work."

Redd: "We will have to make it work or give you your money back."

Ingle made the payment on December 1st, relying on these statements by Redd. On December 29, 1964, he also paid $765.00, the down payment which had been charged to his account at the time the transaction was closed. Subsequently, appellee's employees came out to work on the combine several times while other combines were working. None of this work involved any attempt to correct the trouble with the wheels. Representatives of the implement company told Ingle they could not put bigger wheels on the combine and never did anything to correct the wheel trouble. In June of 1965, appellee changed the battery in the combine upon the request of appellant. An employee also came out at that time to help Ingle start the combine at Ingle's request. Frank Ingle testified that appellant attempted to use the combine in the harvest of 1965.

Insurance was not mentioned in any conversation between the parties. When Mrs. Ingle saw the contract and called the total balance to her husband's attention, she did not notice that items for insurance premiums were included in the contract.

On the face of the time sale agreement, the following items were listed:

| | |
|---|---|
| Delivered cash price | $11,068.00 |
| Sales tax | 332.00 |
| Total cash price | 11,400.00 |
| Total down payment | 2,280.00 |
| Balance | 9,120.00 |
| Property insurance | 563.16 |
| Life insurance | 395.84 |
| Deferred balance | 10,079.00 |

| Finance charge | 1,670.62 |
| Time balance | 11,749.62 |

The testimony is undisputed that Ingle was credited with $1,515.00 on the down payment, so that the actual down payment charged to his account was $765.00. Thus, the actual selling price of the combine was $9,553.00.

Appellee reminded Ingle of the 1965 payment by letters dated November 15, December 7, and December 21, 1965. On the Saturday preceding the last of these letters, appellee's manager and appellant had a conversation in which appellant stated that he was unable to pay for the machine because he was not able to combine beans with it. He went to the extent of telling what parts were broken on it and his inability to get them.

When appellee's motion for directed verdict was made, appellant's counsel stated that appellant was not relying upon the first contract, but the last one (about two days before December 1, 1964) in which "they" guaranteed to appellant they would make the combine work.

A buyer may accept or reject goods which fail to conform to the contract in any respect. Ark. Stat. Ann. § 85-2-601 (Add. 1961). If the combine did not conform to the terms of the conditional sale contract, appellant was required to reject it within a reasonable time. *Hudspeth Motors, Inc.* v. *Wilkinson,* 238 Ark. 410, 382 S. W. 2d 191. By failing to take the necessary steps to reject the machine, Ingle waived any breach of warranty that might have occurred. *Hudspeth Motors, Inc.* v. *Wilkinson, supra.* Rejection must be made within a reasonable time after delivery and reasonable notice given. Ark. Stat. Ann. § 85-2-602; *Green Chevrolet Co.* v. *Kemp,* 241 Ark. 62, 406 S. W. 2d 142. Exercise of ownership by the buyer after rejection is wrongful against the seller, binds the buyer to his acceptance and constitutes a waiver of warranties. §§ 85-2-602, 85-2-

606; *Green Chevrolet Co.* v. *Kemp, supra.* Ingle was barred of any remedy unless he notified the implement company of any alleged breach within a reasonable time after discovery thereof. § 85-2-607.

There is no evidence that Ingle took any steps that could be construed as a rejection of this combine or gave notice to appellee of any rejection or of his claim of a breach until he was called upon to make his payment two months after delivery. The trial court was justified in holding that this action was not within a reasonable time after delivery or after discovery of the breach. Ingle's payment of the December 1st payment and of the down payment on December 29th were inconsistent with any rejection of the equipment.

Appellant contends, however, that his actions were justified by Redd's promise that appellee would make the combine work before the time the 1964 payment was made and it is this agreement upon which appellant relies, according to the statement by his attorney. In the first place, there is no evidence that Redd had any authority to make any such agreement. A salesman has no implied authority to modify a contract for sale of goods. *American Sales Book Co.* v. *Whitaker,* 100 Ark. 360, 140 S. W. 132. One dealing with an agent is bound to ascertain the nature and extent of his authority and cannot trust to mere presumption of authority or the assumption of it by the agent. *Dixie Life & Accident Ins. Co.* v. *Hamm,* 233 Ark. 320, 344 S. W. 2d 601.

Furthermore, appellant's actions are not consistent with a revocation of acceptance based upon these representations as allowed by § 85-2-608. *Hudspeth Motors, Inc.* v. *Wilkinson, supra.* His acceptance was not based upon these assurances that any non-conformity would be cured as required by the statute. His duties with reference to the combine were the same as in case of rejection, i.e., he could not exercise ownership over the equipment. Employees of the company did work on the

equipment thereafter having nothing to do with the condition about which Ingle complained, at Ingle's request. An employee was sent to change a battery in the combine and to help Ingle start it in June, 1965, in response to a request by Ingle. Although appellant admits that appellee's representatives told him repeatedly that they could do nothing about the wheel or the condition, he attempted to use it in the harvest of 1965. This was certainly inconsistent with any rejection or revocation of acceptance.

Actually, the evidence shows that the contract price was not raised, as it appears to have been less than $9,600.00. Appellant's making payments under the terms of the contract and exercising acts of ownership over the equipment after he had full knowledge of the contract terms are certainly inconsistent with his present contentions as to any rights arising out of any unauthorized items in the contract, either as to insurance or contract price. As such, they constituted a ratification of the contract. *Teare* v. *Dennis*, 222 Ark. 622, 262 S. W. 2d 134.

Appellant's contention as to usury depends entirely upon the inclusion of charges for insurance and his contention that the contract price was increased from $9,600.00 to $11,068.00. We have demonstrated the fallacy of both arguments. If appellant's position is incorrect as to either of the contentions, the contract would not be usurious.

Appellant also contends that there was error in allowing interest on the judgment from its date because the time sale contract included interest to December 1, 1967. This contention was not asserted in the trial court and cannot be considered on appeal. *Panich* v. *McLendon*, 241 Ark. 576, 409 S. W. 2d 497; *Old American Life Ins. Co.* v. *Williams*, 241 Ark. 250, 407 S. W. 2d 110; *Planters Lumber Co.* v. *Wilson Company*, 241 Ark. 1005, 413 S. W. 2d 55.

The judgment is affirmed.