**Orris W. BOWEN, d/b/a Bowen Mobile Homes, Appellant,**

v.

**Jack YOUNG, Appellee.**

No. 6347.

Court of Civil Appeals of Texas, El Paso.

Feb. 6, 1974.

Rehearing Denied March 13, 1974.

John H. Whitaker, El Paso, for appellant.

Texas S. Ward, El Paso, for appellee.

## OPINION

OSBORN, Justice

This case involves the right of a purchaser of a mobile home to rescind the sale, the question of a subsequent accept-ance, and the damages of the respective parties resulting from their conduct. In a trial to the Court without a jury, the trial Court found that the buyer, Appellee herein, rightfully rejected the mobile home delivered to him because it did not conform to the sales contract, awarded Appellee $2,000.00 in damages, which was found to be a security interest in the mobile home, and subject to payment of such amount, Appellee was ordered to deliver possession of the mobile home to Appellant, the seller. The case is reversed and remanded for a new trial.

The evidence reflects that on November 14, 1970, the Appellee, who was preparing to move from El Paso to South Carolina to work on a new job, went to see Appellant who sold mobile homes in El Paso, concerning the purchase of a new mobile home and delivery of the unit to him in South Carolina. After seeing several display models, Appellee decided to purchase a Sherwood, two-bedroom, 12' x 65' mobile home. He paid $1,000.00 to Mr. Bowen and signed a sales contract which called for delivery on November 30, 1970. Mr. Young testified that he ordered a gas heating furnace, and although such was not described on the sales contract, the form used did specify optional equipment to include a 3½-ton air conditioner, electric range and 2-door frost free refrigerator and dishwasher. The unpaid balance was $8,900.00, plus finance charges of $4,671.88 for a total cost of $13,571.88, which was to be paid in 84 monthly installments commencing in January, 1971.

The back of the contract contained a disclaimer of all warranties by the seller and provided that buyer was to take the unit "as is." The disclaimer clause provided that the seller specifically makes no warranty as to its merchantability or of its fitness for any purpose. The paragraph did provide that on new units the manufacturer's own warranty would apply together with other separate and individual warranties of the various makers of the accessories and equipment furnished. Just above

the purchasers' signatures was a provision whereby the purchasers certified that they had read the matter printed on the back thereof and agreed to it as a part of the agreement.

The mobile home was not delivered on time and when Appellee contacted Appellant on several occasions in December, 1970, he was assured that the unit would be delivered in a few days. On December 31, 1970, Appellee received a call to advise him that the mobile home had been delivered to Augusta, Georgia, where he would be required to pick it up. Appellee went to Georgia and made arrangements for the mobile home to be moved to Columbia, South Carolina, at a cost of $78.00. After the unit was delivered on January 4, 1971, and hooked up to utilities, the Appellee discovered many defects including the fact that the heating furnace was electric rather than gas, and it was equipped with a 3-ton air conditioning unit rather than the 3½-ton unit which was ordered. According to Appellee's testimony he made numerous telephone complaints to both the seller and the manufacturer without any success in having the defects remedied. On January 21, 1971, he wired the seller that the order was cancelled. At that time he was paying rent for another place to live, storage on his furniture and the cost of the rental space for the mobile home. When the seller made no effort to return his deposit and pay other expenses he had incurred, he decided to move into the mobile home in order to minimize his expenses. In this regard, his testimony was that " * * * when it became apparent that Mr. Bowen or the factory wasn't going to do anything at all I went ahead and had Mr. Duncan repair the heating system and get it going so we could move in it and live in it." He lived in the mobile home for just over a year and then had it moved back to El Paso at a cost of $1,880.00. While living in South Carolina he spent about $581.00 to repair the heating system and convert it to a gas heating system.

Appellant by his first and third points of error complains that the trial Court erred in finding that Appellee rejected the mobile home and erred in failing to find that Appellee subsequently ratified the sale and accepted the unit. There are no findings of fact and conclusions of law filed in the case, but in the judgment entered the trial Court found that Appellee " * * * rightfully rejected the Sherwood two-bedroom, 65 x 12 Foot, Mobile Home, Serial No. 2409, tendered to him by (Appellant), as non-conforming to the Contract of Sale * * *."

The Tex.Bus. & Comm.Code Ann. § 2.-601, V.T.C.A. provides:

" * * * if the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may

(1) reject the whole; . . . ".

Section 2.602 requires that the rejection be within a reasonable time after delivery, with notice to the seller. Then in § 2.711 there is the following provision:

"(c) On rightful rejection or justifiable revocation of acceptance a buyer has a security interest in goods in his possession or control for any payments made on their price and any expenses reasonably incurred in their inspection, receipt, transportation, care and custody and may hold such goods and resell them in like manner as an aggrieved seller."

In this case, Appellee received the mobile home in South Carolina on January 4, 1971. On January 21st, he rejected the unit and advised the seller. Where goods fail "in any respect" to conform to the contract the buyer may, under § 2.601 of the Business and Commerce Code, reject the entire unit. Mobile Housing, Inc. v. Stone, 490 S.W.2d 611 (Tex.Civ.App.—Dallas 1973, no writ); Bender's U.C.C. Service, Vol. 3, § 14.02(1). Certainly the telegram dated January 21, 1971, was evidence to support the trial Court's finding that the Appellee rightfully rejected the

mobile home. It did not conform in every respect to the one ordered, particularly with regard to the size of the air conditioner. The rejection within a few days after the unit had been connected up and all equipment tested, but before Appellee moved into it, was under the circumstances a rejection within a reasonable time and notice was given to the seller by telegram to comply with § 2.602 of the Business and Commerce Code.

■ Although § 2.711(c) gives a buyer a security interest in goods in his possession, and even a right to resell them, it does not give a right to continued use of the goods until the security interest is satisfied. The Appellee testified that after discovering the defects in the mobile home, he telephoned both the seller and manufacturer to obtain some satisfaction toward the repairs and change of the defects. When he sent his telegram on January 21st to the seller, he said therein "Unable to secure commitment from factory." A week earlier he had wired the seller and General Electric Credit Corporation, who was to originally finance the mobile home, that the unit was damaged and that he would not pay until it was completely repaired.

■ Failing to get satisfactory assurance from either the seller or manufacturer concerning the damaged and non-conforming mobile home, Appellee did not seek to foreclose his security interest for the down-payment, transportation and storage expense. Nor did he act in accordance with § 2.604, which provides: " * * * if the seller gives no instructions within a reasonable time after notification of rejection the buyer may store the rejected goods for the seller's account or reship them to him or resell them for the seller's account with reimbursement as provided in the preceding section. Such action is not acceptance or conversion." Instead, he decided sometime in February to move into the mobile home and spent nearly $600.00 to repair the heating unit and change from an electric to a gas heater. By doing so he accepted the goods under § 2.606, and under § 2.607 became obligated to pay at the contract price for the goods accepted, retaining such rights, if any, as existed for damages under § 2.714 and § 2.715. Melody Home Manufacturing Company v. Morrison, 502 S.W.2d 196 (Tex.Civ.App.—Houston (1st Dist.) 1973, writ filed).

On numerous occasions Courts have held that one who exercises dominion over or alters goods in his possession thereby accepts the goods as delivered. In F. W. Lang Co. v. Fleet, 193 Pa.Super. 365, 165 A.2d 258 (1960), suit was brought to recover the sales price of an ice cream freezer and a refrigeration compressor unit sold to the defendant. It was contended that the equipment was defective and wholly unsuitable for the purpose intended. The Court in permitting recovery considered the provisions of § 2.602 and § 2.606 of the Uniform Commercial Code and said:

"In the instant case the defendants exercised dominion over the compressor unit by using it to operate an air conditioner. This is completely inconsistent with the seller's ownership. * * *

A rescission based on breach of warranty must be made within a reasonable time and cannot be made if the buyer exercises an act of dominion over the goods or permits the goods to be altered or changed while in his exclusive possession—".

In Park County Implement Co. v. Craig, 397 P.2d 800 (Wyo.Sup.Ct.1964), suit was brought for the amount due on a purchase of a truck chassis and cab. After delivery of the vehicle the defendants put it in their shop and were installing a hoist and dump bed when a fire occurred destroying the chassis and cab. In holding that the seller was entitled to recover the Court said:

"We hold, therefore, that the transaction in this case was within the Uniform Commercial Code—Sales. The buyers accepted the goods under the provisions

of § 34–2–606(1)(c), W.S.1957 (1963 Cumulative Supp.), 'Acceptance of goods occurs when the buyer does any act inconsistent with the seller's ownership,' when they began installing a hoist and dump bed on the vehicle. At that time the buyer became liable under the provisions of § 34–2–607(1), 'The buyer must pay at the contract rate for any goods accepted.' "

In Marbelite Company, Inc. v. City of Philadelphia, 208 Pa.Super. 256, 222 A.2d 443 (1966), suit was brought to recover the contract price of certain traffic signal equipment purchased by the city. The defendant in its answer contended that the equipment did not meet specifications and was not accepted by it. In denying such defense the Court said:

"We believe the use of the equipment by defendant is patently inconsistent with the seller's ownership and, therefore, constitutes acceptance under the Uniform Commercial Code: . . .

\* \* \* \* \* \*
If defendant City sought to rescind the contract based on a breach of warranty, it should have done so within a reasonable time after a reasonable opportunity to inspect the goods. It cannot be done after the buyer exercises an act of dominion over the goods or permits the goods to be altered or changed while in his exclusive possession."

A similar result was reached in Woods v. Van Wallis Trailer Sales Company, 77 N.M. 121, 419 P.2d 964 (1966), where the buyer appealed from the trial Court's refusal to grant rescission of an agreement to purchase a new mobile home, and restitution of monies paid. In affirming the judgment of the trial Court, the New Mexico Supreme Court held that performing acts of dominion, as well as acts inconsistent with any intention to rescind, amount to an acceptance or ratification.

In Ingle v. Marked Tree Equipment Co., 244 Ark. 1166, 428 S.W.2d 286 (1968), suit was brought for a deficiency judgment on a purchase money note given for a John Deere combine which the defendant contended was defective and rejected by him. In permitting recovery for the deficiency the Court said:

"Exercise of ownership by the buyer after rejection is wrongful against the seller, binds the buyer to his acceptance and constitutes a waiver of warranties."

In Hays Merchandise, Inc. v. Dewey, 78 Wash.2d 343, 474 P.2d 270 (1970), an appeal was taken from a judgment for the sale price of toys delivered to Mr. Dewey. The defendant contended that the shipments did not contain a sufficient number of stuffed animals, in accordance with the original order and therefore the defendant was not liable for the sales price. After concluding that there was an adequate and timely notice of the breach of the terms of the contract, the Court said:

"Even if the notice of revocation had been given in early December and if this were considered timely, the buyer's subsequent acts of dominion over the goods are inconsistent with such claimed revocation."

The action which the buyer may take once he has rejected the goods is summarized in Bender's U.C.C. Service, Vol. 3, § 14.02(1)(c)(i), as follows:

"If the seller does not give reasonable instructions, or does not give any instructions at all, or if the buyer makes such a demand but the seller does not provide indemnity for expenses, then the buyer is entitled to attempt reasonably to sell the goods. In any resale of the goods, it would be for the seller's account. \* \* \*

However, looking at the terms in Section 2–604, the buyer (merchant or nonmer-

chant) is given an option to resell goods for the seller's account even if they are not perishable or do not threaten to decline in value speedily. Under Section 2–604, if the buyer notifies the seller of his rejection within the time required, and if the seller does not remit instructions to the buyer within a reasonable time, then the buyer may either store, reship, or resell the goods. These are optional alternatives but, obviously, the buyer is going to have to do one of these three things."

In this case, Mr. Young did not exercise any of these three options permitted by the Code, but instead took a course of conduct clearly inconsistent with the seller's continued ownership of the mobile home.

In the Texas case upon which the Appellee relies, Mobile Housing, Inc. v. Stone, supra, the buyer did not make substantial changes in the unit or live in it for a year. Thus, the holding in that case that there was a valid rejection is not applicable here. Appellant's first point is overruled and the third point is sustained.

■ In the Appellant's second point of error it is claimed that the trial Court erred in finding that the Appellee could assert a claim against the Appellant on express warranty when the parties had contracted otherwise. The Texas Business and Commerce Code provides in § 2.313 for certain express warranties by the seller and provides that any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model. A warranty that the goods shall be merchantable is provided for in § 2.314, and an implied warranty of fitness for a particular purpose is provided for in § 2.315. Each of those provisions provides for such warranties except where there is an exclusion or modification, and under § 2.316 there is a provision which controls and limits the manner of exclusion or modification of warranties. In this

case the Appellee was shown a sample or model Sherwood mobile home prior to signing the sales contract. The sales contract did comply with § 2.316 for exclusion or modification of warranties, and in dark print which was underlined expressly excluded both expressed and implied warranties, excluded a warranty as to merchantability or fitness, and provided that the parties agreed that the buyer was to take the unit "as is."

In each of these aspects the case is very similar to the facts recited by the Court in its opinion in Mobile Housing, Inc. v. Stone, supra, and upon retrial of the case we believe the decision in that case should be controlling herein if similar proof is again offered in the trial Court. If the trier of the facts concludes that the Appellant made express warranties that the mobile home which the Appellee was purchasing would conform to the sample or model home shown to him on the Appellant's lot, then the "express warranties rest on 'dickered' aspects of the individual bargain, and go so clearly to the essence of that bargain that words of disclaimer in the purchase agreement are repugnant to the basic dickered terms." Mobile Housing, Inc. v. Stone, supra.

■ By his fourth point of error the Appellant complains that the trial Court erred in admitting parol evidence to vary the terms of the written contract between the parties. Rule 418, Texas Rules of Civil Procedure, expressly provides that if complaint is made of the improper admission or rejection of evidence, the full substance of such evidence so admitted shall be set out in the Appellant's brief with reference to the pages of the record where the same may be found. The Appellant's brief does not recite any evidence about which complaint is made nor is there any reference to the pages of the record where such evidence may be found. Having failed to set forth the evidence about which complaint is made nothing is presented for review by

**606**

this Court. Upon retrial the trial Court will be controlled with regard to the receipt or exclusion of parol evidence by the provisions of § 2.202 of the Code and its application as set forth in Mobile Housing, Inc. v. Stone, supra. The rule is amplified in Bender's U.C.C. Service, Vol. 3, § 4.-08(3)(c).

The judgment of the trial Court is reversed and the cause remanded for a new trial in accordance with the opinion of this Court.

## ON MOTION FOR REHEARING

■ Appellee, in his motion for rehearing, urges that if the judgment of the trial Court is not affirmed, then in the alternative those issues with regard to acceptance of the mobile home and breach of warranty should be severed and the case remanded only for a determination of the damages arising from a breach of warranty. In its reply to the motion for rehearing, Appellant states: " * * * that regardless of the terms of the contract Appellant is bound by express warranties based on the Uniform Commercial Code."

Under our original holding that Appellee accepted the mobile home, as a matter of law, by his continued use and exercise of dominion over the mobile home, and Appellant's acknowledgment, if admitted in the trial Court as it is here, that the warranties of the Uniform Commercial Code apply, then the only disputed issue for the trial Court may well be whether the warranties were breached and the damages resulting to the Appellee. Nevertheless, it is necessary to reverse and remand the entire case in order that the trial Court may enter a proper final judgment on all issues of the case including payment for the mobile home, transfer of title, and the damages, or credit against the purchase price, for breach of warranty, if any, as may be established.

The motion for rehearing is overruled.