NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, a Massachusetts corporation, and American Employers' Insurance Company, a Massachusetts corporation as Assignee and Subrogee of New England Mutual Life Insurance Company, Plaintiffs,

v.

LaSALLE NATIONAL BANK, a national banking association, and Merchandise National Bank of Chicago, a national banking association, Defendants,

LaSALLE NATIONAL BANK, a national banking association, Third–Party Plaintiff,

v.

D.L. SASLOW COMPANY, INC., an Illinois corporation, and Barbara More, Third–Party Defendants.

No. 84 C 5038.

United States District Court, N.D. Illinois, E.D.

Oct. 13, 1988.

Gary Kostow, Clausen Miller Gorman Caffrey & Witous, P.C., Chicago, Ill., for defendants/third-party plaintiff.

Robert T. Palmer, Connelly Mustes & Palmer, Chicago, Ill., for D.L. Saslow, third-party defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

### Statement of Facts

New England Mutual Life Insurance Company ("New England"), the original plaintiff in this action, is a Massachusetts-based life insurance company. Barbara More ("More") operated an insurance agency under the name of Max F. Rich & Co. ("Rich & Co.") and acted as New England's agent. D.L. Saslow Company, Inc. ("Saslow") was an insured of New England.

During a ten-month period in 1982, Saslow remitted seven premium checks in amounts totalling $355,000 to More payable to New England for insurance premiums due New England. Allegedly, More fraudulently induced Saslow to add Rich & Co. as a joint payee to one of these checks and to draft the other six checks in a manner which allowed More to add the name "Max F. Rich & Co." as payee. More endorsed the checks by writing or typing variations of "New England Mutual Life Insurance Co." on the backs of the checks. More deposited the checks in an account established with LaSalle National Bank ("LaSalle") designated as the "Max F. Rich & Co., Premium Trust Fund." Rather than remit the full premium payments due New England, More remitted only a part due and withdrew the remaining funds for her personal use.

On June 14, 1984, New England filed suit against LaSalle to recover losses suffered as a result of the defalcation of premiums. As one of its grounds for relief, New England alleged that LaSalle was negligent in their handling of Saslow's premium checks.

In May, 1986, LaSalle and New England settled that claim.

On the basis of New England's negligence action, LaSalle filed a third-party complaint against Saslow and More. Only count I was directed against Saslow. In count I, LaSalle sought contribution under the Illinois Contribution Among Joint Tortfeasors Act, Ill.Rev.Stat. ch. 70, ¶ 301 et seq., ("the Contribution Act"), to recover a pro rata share of common liability from Saslow. In its original complaint, LaSalle alleged that Saslow was negligent in drafting the premium checks remitted to Rich & Co. In response, Saslow moved to dismiss on the ground that LaSalle has failed to state a claim upon which relief could be granted. The court, granting Saslow's motion to dismiss, held that LaSalle could not maintain an action for contribution against Saslow because LaSalle failed to allege that Saslow owed any duty in tort to New England, the original plaintiff in this action. *New England Mutual Life Ins. Co. v. LaSalle National Bank*, 697 F.Supp. 962 (N.D.Ill.1986) (Kocoras, J.) [hereinafter cited as *Opinion* ].

On May 13, 1986, LaSalle filed an amended third-party complaint. In count I, which is directed against Saslow, LaSalle alleges five separate bases to support a cause of action against Saslow under the Contribution Act. First, LaSalle alleges that Saslow improperly remitted the premium checks to Rich & Co. Second, LaSalle alleges that Saslow failed to remit the premium checks directly to New England. Third, LaSalle alleges that Saslow failed to recognize that check no. 45360 was materially altered or that the endorsement was forged, thereby facilitating subsequent alterations and forgeries. Fourth, LaSalle alleges that Saslow failed to recognize that premium payments due to New England were not being credited to its account with New England. Finally, LaSalle alleges that Saslow negligently supervised the activities of its former comptroller-treasurer, Jerry Lapin ("Lapin"), who acted in concert with More to convert premium payments due New England. Additionally, Saslow failed to direct an authorized Saslow employee to complete and remit premium remittance statements to New England.

In response to the amended third-party complaint, Saslow filed a motion for summary judgment arguing that Saslow owes no duty in tort to New England to perform any of the obligations cited by LaSalle. Rather, Saslow argues that any duties it owes to New England run in contract. Furthermore, Saslow contends that it has fully performed those contractual duties. Finally, Saslow contends that any damages sustained by New England resulted from LaSalle's negligence and are "economic damages" for which the Contribution Act does not provide relief.[1]

### Discussion

On a motion for summary judgment, "all factual inferences are to be taken against the moving party and in favor of the opposing party." *International Administrators v. Life Ins. Co.*, 753 F.2d 1373, 1378 (7th Cir.1985). Fed.R.Civ.P. 56 provides that summary judgment is to be granted if the record, including the pleadings, depositions and answers to interrogatories, admissions and affidavits show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." On the basis of this standard, Saslow's motion for summary judgment must be granted.

This Court must grant summary judgment in Saslow's favor because LaSalle has failed to allege that Saslow owes any duty in tort to New England. The Illinois Contribution Among Joint Tortfeasors Act, Ill. Rev.Stat. ch. 70, ¶¶ 301, 302, applies only when "two or more persons are subject to liability in tort." Judge Kocoras cited this limitation when he dismissed Saslow as a third-party defendant at an earlier stage of this litigation. *Opinion* at 965 ("[T]he Illinois contribution statute requires that

---

1. Because we decide Saslow's motion on other grounds, we have not addressed the issue of economic damages.

Saslow be liable in tort to the original plaintiff before an action for contribution may be brought against [Saslow]."). To maintain an action for contribution, LaSalle must show that Saslow breached a duty of care it owed to New England. This Court's analysis of the relevant facts and law reveals that LaSalle has failed to establish that Saslow owed any duty in tort to New England. We will discuss each of the five duties alleged by LaSalle in turn.

### I. Saslow Improperly Remitted Premium Checks to Rich & Co.

■ LaSalle alleges that Saslow improperly remitted premium checks to Rich & Co. LaSalle argues that Saslow owed a duty to New England to ascertain whether Rich & Co. was an agent or a fiduciary of New England authorized to accept premium payments. Saslow, LaSalle contends, failed to discharge this duty because Saslow did not determine that Rich & Co. was not an authorized agent.[2] In rebuttal, Saslow argues that Saslow owed no duty in tort to New England to ascertain whom New England authorized to collect premiums; rather, any obligation Saslow may have had to New England is contractual. Saslow argues that it has fully performed its contractual obligation by tendering payments to Rich & Co.

LaSalle cites a number of older cases from other circuits and districts which discuss a duty on the part of the insured to determine the extent of an agent's authority with whom he is dealing. See Massachusetts Mutual Life Insurance Co. v. National Bank of Commerce, 95 F.2d 797, 801 (4th Cir.1938); Dodson v. Mutual of Omaha Insurance Co., 354 F.Supp. 1350, 1352 (D.C.Canal Zone 1973); Dixie Life & Accident Insurance Co. v. Hamm, 233 Ark. 320, 344 S.W.2d 601 (1961). These cases do not hold that an insured owes a duty in tort to an insurer to determine the extent of an agent's authority. In each case, the insured, seeking to recover under the policy, relied on the authority of the insurer's agent to make oral promises which contradicted express policy terms.[3] In each case, by precluding recovery, the court merely enforced the express contract between the parties.

This Court need not resolve "issues" regarding Rich & Co.'s actual, apparent, or ratified authority to determine Saslow's obligations under the Contribution Act. Any "duty" to remit premiums in a particular manner or to a particular individual, company or address arises from the insured's contractual obligations. As Judge Kocoras stated in his earlier opinion, "[a] failure to fulfill this duty would give New England the right to sue Saslow for breach of contract, not for a tort. By its own terms, the Illinois Contribution Act applies only when 'two or more persons are subject to liability in tort.' Ill.Rev.Stat. ch. 70 § 302(a) (emphasis added). Therefore, Saslow's duty to New England under the insurance contract

**2.** LaSalle's arguments regarding Saslow's breach of the "duty to ascertain New England's authorized agents" took a curious and confusing twist. LaSalle argued that Rich & Co. was Saslow's agent and that Saslow did not "perform" its obligations until Rich & Co. remitted Saslow's premiums to New England. Although this particular argument is irrelevant to any "duty" Saslow might owe to New England, Saslow responded to LaSalle's allegations with a defense founded upon the law of agency. Saslow contends that New England clothed Rich & Co. with apparent authority to collect premiums and that New England ratified this authority when it accepted premium payments from Rich & Co. Because any "duty" to remit premiums arises in contract rather than in tort, this Court need not reach this issue.

**3.** In Massachusetts Mutual Life Insurance Co. v. National Bank of Commerce, 95 F.2d 797, 801 (4th Cir.1938), the Fourth Circuit, reversing a judgment in favor of the insured, enforced a clause of the policy which required approval of any contract for insurance at the insurer's home office. Because the insurer had not approved the insurance contract at the time of the insured's death, the express language of the policy precluded the insured's suit. In Dodson v. Mutual of Omaha Insurance Co., 354 F.Supp. 1350, 1352 (D.C.Canal Zone 1973), because no dependents were listed on a policy, the court precluded an insured from asserting a claim for a child's medical expenses despite a soliciting agent's representations to the contrary. In Dixie Life & Accident Insurance Co. v. Hamm, 233 Ark. 320, 344 S.W.2d 601 (1961), the court, enforcing a clause which required an insured to send premium payments directly to the insurer, precluded an insured from suing on a lapsed policy even though the insured had made premium payments to the insurer's soliciting agent.

will not support an action for contribution from Saslow." *Opinion* at 964.

## II. *Saslow Failed to Remit the Premium Checks Directly to New England.*

As their second ground for relief, La-Salle alleges that Saslow owed New England a duty to directly remit premiums to New England. LaSalle argues that Saslow breached this duty because Saslow remitted its premiums to Rich & Co. for transmittal to New England. In response, Saslow argues that it owes no duty in tort to directly remit premiums to New England. In fact, such duty exists, if it exists at all, under Saslow's policy with New England. The court previously determined that any breach of the duty to remit premiums directly to New England gives rise to a breach of contract action and not a tort action. *Opinion* at 964. Consequently, Saslow's alleged failure to remit premiums directly to New England cannot support an action under the Contribution Act.

## III. *Saslow Facilitated More's Fraud by Inadequately Reviewing Monthly Bank Statements.*

■ As its third basis of recovery, La-Salle argues that Saslow owed a duty to New England to review monthly statements and returned checks to detect material alterations and forged endorsements. Specifically, LaSalle alleges that Saslow failed to recognize that check no. 45360 was materially altered or that the endorsement was forged and that this conduct facilitated subsequent alterations or forgeries. If Saslow had diligently discharged this "duty," LaSalle alleges that Saslow would have recognized that Rich & Co. was added as a payee and could have prevented More's fraudulent conduct.

In rebuttal, Saslow points out that the court previously held that Saslow owes no duty to New England, as payee, to guard against subsequent alterations and forgeries of premium checks. *Opinion* at 964–65. Any "duty to review" cancelled checks and bank statements to detect alterations and forgeries would derive from the duty to guard against subsequent alterations and forgeries. If Saslow owed no duty to New England to guard against subsequent alterations and forgeries, logic dictates that Saslow owes no "duty to review" and detect alterations and forgeries. Accordingly, LaSalle may not recover under the Contribution Act for Saslow's breach of the "duty to review" cancelled checks and bank statements.[4]

## IV. *Saslow Failed to Recognize That Premium Payments Due Were Not Being Credited to its Account.*

■ LaSalle alleges that Saslow failed to recognize that premium payments due New England were not being credited to Saslow's account. LaSalle argues that this failure makes Saslow liable to New England in tort and supports LaSalle's action for contribution from Saslow. Saslow raises alternate defenses to this allegation. First, Saslow argues that it owed no duty of care to New England to recognize whether premiums were being credited to Saslow's account. Alternatively, Saslow argues that any duty it may owe to ensure that premium payments were being credited to its account arises from Saslow's contractual obligations. We agree with Saslow.

This Court commends LaSalle for its creativity in drafting this particular allegation;[5] however, as we have previously stat-

---

4. In his opinion, Judge Kocoras held that, under Uniform Commercial Code section 3–406, Ill. Rev.Stat. ch. 26 ¶ 3–406, when a maker of a note or drawer of a check negligently drafts the note or check, the maker or drawer is estopped from asserting the alteration against a holder in due course. The maker or drawer is not liable *in tort* for damages resulting from an alteration. *Opinion* at 965.
   LaSalle argues that UCC § 3–406 is not controlling on this issue because LaSalle is alleging negligent conduct other than negligent drafting. This argument is without merit. The language

of the statute is general and, although the focus is primarily on negligent drafting, there is nothing in the comments, case law or provision itself which limits its application solely to negligent drafting. Whether LaSalle alleges negligent drafting or negligent "review" facilitating subsequent alterations, UCC § 3–406 is controlling. That section imposes no duty on Saslow to review cancelled checks to prevent alterations.

5. We note for the record that LaSalle points to no legal authority which supports any duty to review account statements to ensure that pay-

ed, any duty to remit premiums in a particular manner or to a particular company or address arises from the insured's contractual obligations. *See supra* p. 968. Any "duty to review" an account statement derives from Saslow's obligation to pay for the insurance coverage provided by New England. A breach of a duty imposed because of a contractual relationship will not support a tort action. Therefore, LaSalle may not recover under the Contribution Act.

### V. *Saslow Negligently Supervised its Employees.*

As its final basis for relief, LaSalle argues that Saslow negligently supervised its employees in two ways. First, LaSalle alleges that Saslow owed a duty to New England to direct a Saslow employee to complete the premium remittance forms and forward them to New England. Saslow allegedly failed to perform this obligation because it allowed Rich & Co. to complete and forward these forms to New England. Second, LaSalle alleges that Saslow had a duty to supervise its former comptroller-treasurer, Jerry Lapin ("La-

pin"), to ensure that premium payments were properly remitted to New England. Rather than addressing each of the two ways in which LaSalle alleges that Saslow was negligent in its supervision, Saslow treats the allegations as one claim of negligent supervision. We will address the claims separately.

■ Regarding LaSalle's first allegation, we again find that any duty Saslow had to complete and forward premium remittance forms arose from its insurance contract with New England.[6] A breach of this obligation would allow New England to sue for a breach of contract not a tort. A contract action will not support a suit under the Contribution Act.[7]

In its second allegation, LaSalle adds a new twist to this case by alleging that the negligent conduct of Jerry Lapin contributed to New England's loss resulting from More's defalcation. Specifically, LaSalle alleges that Lapin added Rich & Co. as a payee to one of Saslow's premium payments and allowed another employee to add Rich & Co. as a payee on six subsequent payments.[8] If Saslow had properly super-

---

ments are credited properly. We also have been unable to locate any authority directly supporting that "duty." Section 4–406 of the Uniform Commercial Code, Ill.Rev.Stat. ch. 26, ¶ 4–406, which addresses a customer's duty to examine his bank statement for errors, corresponds most closely with LaSalle's argument. Assuming *arguendo* that the section 4–406 duty to review bank statements provides a sufficient analogy to insurance matters, section 4–406 provides LaSalle with little support in its quest for contribution. A breach of the section 4–406 duty to review does not give rise to a tort action; instead, section 4–406 precludes a customer from asserting against the bank his unauthorized signature or an alteration where the bank establishes that it suffered a loss because of the customer's breach. Ill.Rev.Stat. ch. 26, ¶ 4–406 comments 3 & 4. We believe a breach of "the duty to review account statements" which are a byproduct of a contractual relationship like the relationship between Saslow and New England merely would estop the breaching party from asserting inaccuracies in the account statement against the nonbreaching party. The breach would not give rise to any tort. Hence, the breach would not support an action under the Contribution Act.

6. In its earlier pleadings, LaSalle acknowledged the contractual nature of Saslow's purported duty to complete and forward premium remit-

tance forms. On June 11, 1985, LaSalle filed its Memorandum in Opposition to Saslow's Motion to Dismiss LaSalle's Third–Party Complaint. In that pleading, LaSalle stated that according to an instruction "pamphlet and *as a provision of New England's insurance policy,* Saslow was required to prepare monthly information forms ("premium remittance statements") ... [which] Saslow was then required to remit ... directly to New England in Boston, Massachusetts." *Memorandum* at 2 (emphasis added). We agree with LaSalle's earlier position.

7. We need not consider whether Saslow, in fact, complied with its contractual obligations or whether New England somehow authorized a course of conduct different from that required by the insurance policy with Saslow.

8. LaSalle takes its argument one step further by arguing that Lapin received "kickbacks" from More for adding Rich & Co. as a payee to Saslow's premium payments. We note that LaSalle has failed completely to support its "kickback" theory. While Lapin did receive payments from More, such payments were "finder's fees" or "commissions" on referrals from Lapin. This explanation obviously satisfied New England because it sought no recourse against Lapin in any court proceeding, either civil or criminal.

vised Lapin, LaSalle argues that New England would not have suffered any loss.

LaSalle's allegation is fatally flawed. LaSalle is unable to articulate any duty, independent of contractual duties, to directly or properly remit premium payments to New England. LaSalle's negligent supervision allegation merely shifts the focus from the contractual duty to remit premiums to the conduct of employees when the employees remit premiums. LaSalle seeks to expand a duty which exists, if at all, because of the contractual relationship between Saslow and New England. LaSalle can identify no relationship between Saslow and New England, other than a contractual relationship, which would support the imposition of a duty of care on Saslow to the benefit of New England. *See Heldt v. Brei*, 118 Ill.App.3d 798, 802, 74 Ill.Dec. 413, 416, 455 N.E.2d 842, 845 (1st Dist. 1983). A breach of the duties arising from Saslow's contractual relationship with New England will not support an action in tort. *See generally Album Graphics, Inc. v. Beatrice Foods Co.*, 87 Ill.App.3d 338, 348–51, 42 Ill.Dec. 332, 340–42, 408 N.E.2d 1041, 1049–51 (1st Dist.1980). Therefore, LaSalle can not recover from Saslow under the Contribution Act.

### Conclusion

For the reasons stated in this opinion, this Court enters summary judgment in favor of D.L. Saslow Company, Inc. and against LaSalle National Bank.